Murray **SCHLANGER**, Plaintiff,

v.

**FOUR–PHASE SYSTEMS, INC., et al., Defendants.**

No. 81 Civ. 7798 (CLB).

United States District Court, S.D. New York.

March 6, 1984.

Max W. Berger and Daniel Berger of Bernstein, Litowitz, Berger & Grossman, New York City, for plaintiff.

Garrett Johnson of Kirkland & Ellis, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

BRIEANT, District Judge.

By motion filed October 14, 1983 and fully submitted for decision on November 22, 1983, defendants in this class action, brought under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), Rule 10b–5 of the Securities and Exchange Commission, 17 C.F.R. § 240.10b–5, and state common law, seek summary judgment in their favor on the ground that the undisputed facts establish that no material misstatements or omissions were made, and that defendants acted without scienter. Plaintiff opposes the motion for the reasons stated below. Familiarity with all prior proceedings in this matter is assumed. The facts relevant to the instant motion are as set forth below.

According to the Amended Class Action Complaint, filed July 16, 1982, defendant Four-Phase Systems, Inc. ("Four-Phase") is the issuer of common stock which was, at the relevant time, listed and traded on the New York Stock Exchange ("NYSE"). The individual defendants are former officers and/or directors of Four-Phase. Plaintiff is suing as the representative of a class which includes all persons other than defendants who owned Four-Phase stock immediately prior to the December 2, 1981 public announcement by the issuer quoted below, and who sold the stock at any time prior to a later announcement on December 10, 1981, of a proposed merger by the issuer with Motorola ("Motorola"). (*See* Memorandum and Order dated Nov. 10, 1982, at 2 and 8). 555 F.Supp. 535.

On December 2, 1982 the defendants issued an announcement (the "Hodder Statement"), disseminated to the public over the Dow-Jones wire, which read as follows:

"R. Frederick Hodder, Treasurer of Four-Phase Systems said the Company is not aware of any corporate developments which would affect the market of its stock."

This statement was released following several calls to Four-Phase from Veronica Dever, a marketing representative of the NYSE, regarding a steep and sudden rise in the market price and concurrent increase in the trading volume of Four-Phase common stock. It is undisputed that on November 27, November 30 and December 1, 1981, the three trading days before Decem-

ber 2, 1981, Four-Phase closed on the NYSE at prices of $28, $27⅝ths and $28¾ths on share volume of 27,500, 18,000 and 39,800 shares, respectively. On December 2, 1981, the price rose to $34½ with a volume of 302,000 shares.

Plaintiff claims that the Hodder Statement was false and also that it contained a material omission. In essence, plaintiff seeks to establish at trial that word of then on-going merger negotiations between Four-Phase and Motorola had leaked, causing the substantial change in the volume of shares sold and the market price experienced on December 2, 1981, prior to release of the Hodder Statement, and that the market subsequently reacted adversely to Four-Phase stock and its price dropped as a result of the Hodder Statement. It is conceded that on December 8, 1981, when the NYSE halted trading, the stock closed at $32⅞ths with a volume of 103,200 shares. On December 10, 1982, while trading was halted, Four-Phase announced that it had entered into a merger agreement with Motorola, whereby Motorola would acquire all Four-Phase stock for Motorola stock in an exchange valued at $45 per share. On December 11, 1981, when trading resumed, the closing price of Four-Phase stock was $39½ with a volume of 527,900 shares.

Plaintiff pleads that the December 2nd statement was materially false and misleading, that defendants knew that a merger was under discussion with Motorola, and that they also knew that the possibility of such a merger was a favorable corporate development which could and did in fact affect the market in the stock once news of the merger negotiations leaked. Except with relation to the merger negotiations, they knew of nothing else which could have produced the market reaction. Accordingly, they knew that the Hodder Statement was false and misleading as to a material fact.

It is alleged further that the Hodder Statement artificially depressed the market price of Four-Phase, thus affecting the "integrity" of the market, and that in reliance on the Hodder Statement and/or the integrity of the market, plaintiff and those similarly situated sold their stock during the class period, suffering damages or a lost benefit which would have been enjoyed had they awaited the merger.

Defendants contend that in light of the information known to Four-Phase and the individual defendants on December 2, 1981, the Hodder Statement was neither a material misstatement nor a material omission, and they assert further that the same undisputed facts establish that they acted without the requisite fraudulent intent. Additionally, they argue that scienter is lacking because Four-Phase issued the release on the "advice of counsel." For these reasons, they urge that summary judgment is appropriate under *Reiss v. Pan American World Airways, Inc.*, 711 F.2d 11 (2d Cir.1983). A review of the events preceding the December 2nd announcement follows.

In February 1981 Four-Phase, through its president and chairman, Lee Boysel, vice-president of finance, Glen McLaughlin, and a director, Neil Brownstein, met with Frederick Frank, a managing director of Lehman Brothers Kuhn Loeb ("Lehman"), Four-Phase's investment banker, to discuss the prospects of a merger of Four-Phase into some other company as a means of financing the company's long-term capital requirements for future operations and expansion and to investigate Lehman's qualifications for representing Four-Phase in any merger investigations and negotiations. A further meeting with Lehman was held on February 20, 1981 at which Lehman presented a list of selected merger candidates, Lehman's fee arrangement was discussed, a strategy for contacting only three potential merger candidates at any one time was adopted, and a code name, "Project Sherwood," was selected for the joint effort to acquire a merger partner. Subsequent to this meeting, Four-Phase directed Lehman to proceed with Project Sherwood, a fee arrangement was agreed upon, and Lehman was engaged as the exclusive agent for the purpose of finding

a purchaser or merger partner for the company.

In the Spring of 1981, Lehman first contacted Motorola in connection with Project Sherwood. Written materials about Four-Phase were forwarded to Motorola, and Motorola informed Lehman that such an acquisition might be consistent with its own growth strategies. In the months that followed, Lehman also approached two other potential partners, General Dynamics and McDonnell Douglas, each of which also expressed an interest in acquiring Four-Phase. However, all acquisition plans were delayed while Four-Phase prepared for a public offering of debentures which became effective in June 1981, and it was not until August 28, 1981 that representatives of Four-Phase and Motorola met to discuss a possible merger.

At that time, Motorola presented its notion of the necessary event or stages precedent to an agreement to purchase Four-Phase. These included a thorough investigation of the company's management, a detailed evaluation of the company's business, and a careful pricing analysis of any proposed transaction. Several additional meetings among various representatives of Motorola and Four-Phase took place in September, October and November, 1981, at which the structure of the acquisition and its pricing were discussed. Also during this period, Lehman slowed down its activities with respect to the other two merger candidates, and "increasingly detailed information regarding Four-Phase, its products, its current operations, its finances, and its business projections" was provided to Motorola. (See Affidavit of Glen McLaughlin, sworn to October 13, 1983, at ¶ 5). Motorola, for its part, retained its own investment banking firm, Goldman Sachs & Co., to assist in the merger negotiations, and several reports were prepared by that firm on the structure and price of a proposed acquisition.

The last meeting between Four-Phase and Motorola before the December 2nd Hodder Statement took place on November 23rd and 24th at Four-Phase headquarters, when Motorola's chairman and vice-chairman first visited Four-Phase. Although the negotiations proceeded with Motorola stating that it would reflect on the proposed transaction and contact Four-Phase, defendants assert that no offer to acquire Four-Phase was made at that time, and that from the close of this meeting until the issuance of the press release on December 2nd, there were no further meetings or other communications between Four-Phase and Motorola.

Defendants argue in effect that because no formal offer had been made by Motorola at the time the Hodder Statement was issued, Four-Phase's decision not to reveal its ongoing merger negotiations with Motorola cannot be actionable under § 10(b) or Rule 10b–5. They, in effect, characterize the press release as a failure to disclose or an omission, and therefore they rely upon the decision of the Court of Appeals in *Reiss v. PanAm, supra,* wherein the Court concluded that summary judgment for the defendant in that case was appropriate, because "[i]t does not serve the underlying purpose of the securities acts to compel disclosure of merger negotiations in the not unusual circumstances before us." 711 F.2d at 14.

Defendants urge that this conclusion was premised upon the Court's recognition that "[s]uch negotiations are inherently fluid," and their premature disclosure "may in fact be more misleading than secrecy so far as investment decisions are concerned." *Id.* In addition, defendants rely upon *Staffin v. Greenburg,* 672 F.2d 1196 (3d Cir. 1982), which was cited in *Reiss,* wherein the Court observed that:

"Those persons who would buy stock on the basis of the occurrence of preliminary merger discussions preceding a merger which never occurs, are left 'holding the bag' on a stock whose value was inflated purely by an inchoate hope." *Staffin, supra,* at 1206–07.

Defendants contend further that the imposition of a disclosure requirement with respect to merger negotiations would make such negotiations "virtually impossible,"

because any statement made would carry a grave risk of liability whenever discussions did not result in a merger. (See Memorandum in Support of Defendants' Motion for Summary Judgment filed October 14, 1983, at 11, quoting from *Reiss, supra* at 14).

Finally, defendants have furnished to the Court a recent unpublished decision of a Judge of the United States District Court for the Eastern District of Pennsylvania, *Greenfield v. Heublein, Inc.*, 575 F.Supp. 1325 (E.D.Pa.1983), in which that court granted the defendants' motion to dismiss, holding that there is no duty to disclose preliminary merger discussions prior to the date when an agreement in principle is reached. See *Greenfield, supra*, at 1337.

We consider that portion of the argument based on *Greenfield* at the outset. In this Court's view the *Greenfield* decision is wrong, essentially because it fails to distinguish between cases involving false or misleading statements, and situations involving a decision merely to remain silent and not disclose pre-merger negotiations. In any event, the decision in *Greenfield*, so much emphasized in defendants' argument, is not binding precedent in this Court. Indeed, it would not be binding were its author appointed for this district. See *Farley v. Farley*, 481 F.2d 1009, 1012 (3d Cir.1973), which holds:

> "[E]ven if [prior E.D.Pa. district court decision] had decided the precise issue, its holding is not a precedent binding on other courts. The decision of a three-judge court is entitled to no more weight than any other district court decision. See 1B J. Moore, Federal Practice ¶ 0.402[1] n. 29 at 62. Consequently, the [prior district court decision] is not necessarily binding on any other district court, *id.* at 61, and does not invariably have to be followed in the Eastern District. *Id.* at 58–59."

See also, *United States v. Birney*, 686 F.2d 102, 107 (2d Cir.1982) (law of the case); *Aknin v. Phillips*, 424 F.Supp. 104, 105 (S.D.N.Y.1977) (this court may disregard conflicting decision of the Third Circuit).

Opposing the motion, plaintiffs assert that the issue of materiality cannot be resolved in defendants' favor as a matter of law, or absent a plenary trial. They argue, in the alternative, that in light of the undisputed facts summary judgment should be granted in plaintiff's favor, or that the Court should deny defendants' motion for summary judgment, because genuine issues of fact are in dispute regarding when Four-Phase received an offer from Motorola and whether defendants had a reasonable basis for concluding that there was a leak of information by December 2nd. (See Plaintiff's Statement Pursuant to Rule 3(g), filed November 10, 1983).

■ Plaintiff contends, and this Court concludes, that defendants, having chosen to issue a public statement in response to the unusual market activity in Four-Phase as observed by the NYSE, were required to include in that statement when issued, every "material fact necessary in order to make the statements made, in light of the circumstances under when they were made, not misleading."

Plaintiff apparently concedes, and the Court agrees, that Four-Phase could have remained silent, and would not have been required, under *Reiss*, to issue any public announcement concerning the then inchoate merger negotiations with Motorola. Rather, plaintiff argues that the duty to disclose arose when defendants chose to make a statement, and that any such statement was required to tell the truth. It is asserted further that the cases cited by the defendants are distinguishable, and that the materiality of the Hodder Statement is established by the facial language of the release, and the fact that Four-Phase's stock fell after the announcement, as previously noted, and then rose following the December 10, 1981 merger announcement. No explanation of the price activity prior to December 2nd is suggested, other than leaks of the existence of the merger discussions. Of course, the defendants knew that there is no secret when two people know it. More than a few persons knew Four-Phase was actively seeking to merge

and if Four-Phase's managers had not thought that the negotiations were worthy of further pursuit, presumably they would have suspended the discussions or re-opened dealings with others. They knew of no *other* fact, apart from leaks, which could have explained the sudden rise in price and volume.

 This Court agrees that summary judgment cannot be granted in defendants' favor with respect to the issues of duty and materiality, and that contested issues of fact are present in this case. While the federal securities laws do not impose a general duty upon an issuer to disclose material facts or new developments when it is not trading in its own securities, it does have a duty to make certain that any statement it does issue is truthful and complete, and does not materially misrepresent the facts existing at the time of the announcement. *Securities and Exchange Commission v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 860–62 (2d Cir.1968) (*en banc*), *cert. denied*, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969); see also *State Teachers Retirement Board v. Fluor Corp.*, 654 F.2d 843, 853 (2d Cir.1981). In this case, defendants *did* make an announcement, intended to be relied on by purchasers and sellers, and therefore had a duty to make a statement which was both truthful insofar as it went, and not misleading in light of the facts known at that time.

The authority cited by the defendants is not persuasive. *Reiss, supra*, is clearly distinguishable as a case involving an omission, under circumstances where there was no duty to disclose inchoate merger plans. In that case, defendant Pan American had secured a loan commitment in connection with its desire to acquire National Airlines. However, its initial approach to National Airlines was rebuffed, and the loan commitment expired. In the meantime, both Pan American and Texas International Airlines began purchasing National Airlines' stock in the open market. At about the same time, but completely unrelated to its purchases of National Airlines stock, Pan American authorized the redemption of its convertible debentures in the belief that because the current market price of Pan American stock exceeded the conversion price debentureholders would convert. Pan American announced the redemption, but made no announcement regarding its simultaneous decision to renew its efforts to acquire National Airlines. A week later Pan American announced a firm offer to acquire National Airlines, thereby causing a rise in market price of its own stock. Debentureholders who had sold their debentures, rather than converting them to common stock, commenced an action under Rule 10b–5, asserting that had they known, they would have converted.

*Reiss* is distinguishable on several important grounds: it involved a failure by Pan American to disclose *anything* about its intentions to offer to acquire National Airlines, this in the context of an otherwise truthful statement concerning an unrelated corporate development. There had been no current history of discussions or negotiations between Pan American and National Airlines; there had been no unusual market activity in Pan American's stock; the release issued concerning the debentures itself served to encourage debentureholders to convert rather than to sell. Nothing was leaking into the market from insiders.

*Staffin, supra*, is also distinguishable. In that case, the issuer made a tender offer for its own stock. Prior to the date of the closing of this offer, an officer of the issuer, without consulting its controlling person, suggested to a company with whom the issuer had prior dealings, that it might wish to meet to discuss the possible acquisition of the issuer. It was held that there was no affirmative duty to disclose this in connection with the tender offer. *Staffin, supra*, 672 F.2d at 1205–06. However, unlike the instant case, no statement of any kind was made by the issuer, and there was no evidence of any unusual market activity or leaks of inside information. Moreover, when the issuer and the potential purchaser did arrange a meeting, and trading in the issuer's stock increased dramatically, suggesting a leak, the issuer released a

statement disclosing that "exploratory talks" were scheduled with a potential purchaser. 672 F.2d at 1201.

This Court concludes that defendants, once having chosen to make a statement of fact, had a duty to disclose all material facts "necessary in order to make the statement made, in light of the circumstances under which it was made, not misleading." Accordingly, the Hodder Statement may give rise to liability if at trial it is determined that the statement was intentionally or recklessly false, in light of what was known at the time, including any facts from which a leak could be inferred, and was also material.

 Under *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976), materiality has been defined as a:

"showing of substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder. Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available."

Such a determination is peculiarly within the province of the trier of fact, see *TSC Industries, Inc., supra*, at 450, 96 S.Ct. at 2133, and should be resolved at a plenary trial.

Defendants also assert that their motion for summary judgment should be granted because there is no evidence that "any Four-Phase officer acted recklessly or with intent to deceive or defraud in issuing the December 2 release." (Memorandum in Support of Defendants' Motion for Summary Judgment, filed October 14, 1983, at 11–12). In support, defendants again cite *Reiss, supra*, wherein it was held that scienter was not established where plaintiffs could only prove that the defendant who made no statement feared that *any* release regarding a possible merger would be misleading and could have jeopardized the merger negotiations. In addition, they

urge that lack of scienter is established if, as is claimed here, defendants made full disclosure to counsel, requested counsel's advice on the legality of the contemplated action, received advice that it was legal, and relied in good faith on that advice. [Memorandum in Support of Defendants' Motion for Summary Judgment, filed Oct. 14, 1983, at 13, citing *Securities and Exchange Commission v. Savoy Industries, Inc.*, 665 F.2d 1310, 1314 (D.C.Cir.1981); *Securities and Exchange Commission v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1101–02 (2d Cir.1972); and *Securities and Exchange Commission v. Harwyn Industries Corp.*, 326 F.Supp. 943, 954 (S.D. N.Y.1971) ].

Plaintiff opposes by contending that the credibility of the defendants, as it relates to scienter, is in issue and that accordingly summary judgment in favor of defendants must be denied. Alternatively, plaintiff asserts that even if the facts as presented by defendants are taken as true, this Court should find, as a matter of law, that defendants acted with the requisite fraudulent intent.

Specifically, plaintiff contends that the "intense trading in [Four-Phase] stock and violent price fluctuation" on December 2nd, of which defendants were well aware, and must have realized came from leaks of the merger dealings, negates any inference that they issued the Hodder Statement in good faith.

 To establish scienter under § 10(b) and Rule 10b–5, of course, more than a conscious misstatement or failure to disclose must be shown. In general, "there must be proof that the [misstatement or the] nondisclosure was also intended to mislead." *Reiss, supra*, 711 F.2d at 14. However, in situations where the defendants, as here, owe a fiduciary duty to the seller of securities, reckless conduct is sufficient to establish scienter. See *Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 575 (2d Cir.), *cert. denied*, 459 U.S. 838, 103 S.Ct. 86, 74 L.Ed.2d 80 (1982), *citing, IIT v. Cornfeld*, 619 F.2d 909, 923 (2d Cir.1980).

On the basis of the affidavits submitted by defendants, this Court cannot conclude that they did not intentionally or recklessly mislead the public in releasing the December 2nd statement.

It is argued that at the time of the NYSE inquiries which led to the Statement, Four-Phase did not know one way or the other whether there would be a merger offer from Motorola or any other company. (McLaughlin Affidavit, ¶ 7). However, defendants do not dispute that high-level discussions and negotiations between Four-Phase and Motorola had taken place. (McLaughlin Affidavit, ¶¶ 5 and 6; Affidavit of Robert W. Galvin, sworn to October 12, 1983, ¶ 6). Certainly those who bought stock in reliance on the leaks regarded the leaked information as highly material.

Nor do conclusory statements that high volume and sudden price rises had occurred before (McLaughlin Affidavit, ¶ 10), or that the company did not have direct knowledge of leaks concerning the merger negotiations (McLaughlin Affidavit, ¶ 11), or that there was no information indicating a "breach of confidentiality" regarding the negotiations with Motorola (*Id.*) lead inevitably to the conclusion that the defendants acted without scienter. The trier of fact could choose to disbelieve such statements or could find that defendants acted recklessly, because they were aware of unusual market activity in Four-Phase's stock which reasonably could have been caused by a leak, in light of the recent discussions with Motorola, and no other possible concurrent causative event or fact was known to them. This also distinguishes the instant case from *Reiss, supra*, which did not involve any evidence of unusual market activity.

Moreover, in *Reiss*, the Court premised its findings upon the fact that full disclosure would have benefitted the defendant, because it "would have increased the trading price of its common stock," thus increasing "the incentive for debentureholders to convert." 711 F.2d at 14. In the instant case it is at least arguable that the December 2nd statement, which foreseeably could lower the market price of Four-Phase stock, benefitted Four-Phase because full and truthful disclosure would have increased the market price making a merger less appealing. It probably could be developed by expert testimony at trial that for a merger or tender offer to succeed the value of the proceeds must usually be significantly greater than the market price of the shares at the time of announcement.

There is also no merit in defendants' contention that summary judgment is warranted because good faith reliance upon advice of counsel relieves them of any liability. It has never been the law that defendants may avoid liability under § 10(b) or Rule 10b–5 by consulting with counsel before engaging in fraudulent conduct, or uttering material false statements. See, e.g., *Wellman v. Dickinson*, 475 F.Supp. 783, 832 (S.D.N.Y.1979), *aff'd*, 682 F.2d 355 (2d Cir.1982), *cert. denied*, — U.S. —, 103 S.Ct. 1522, 75 L.Ed.2d 946 (1983). Such reliance has, however, been considered by courts in determining the appropriate form of relief in civil actions instituted by the Securities and Exchange Commission, see, e.g., *Securities and Exchange Commission v. Savoy Industries, Inc.*, 665 F.2d 1310, 1314–15 and n. 28 (D.C.Cir.1981); *Securities and Exchange Commission v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1101–02 (2d Cir.1972). It does not excuse the violation, if a violation did occur.

Defendants' motion for summary judgment is denied in its entirety. Plaintiff's application for summary judgment is also denied, as a matter of discretion because the Court believes that the totality of facts, including specifically the facts concerning the issues of materiality and scienter, should be fully developed in a plenary trial.

Counsel for the parties shall appear on April 5, 1984 at 9:30 A.M. in courtroom 705 for a final pre-trial conference to set a trial date. All pre-trial discovery in the action shall be completed by that date.

So Ordered.