Harold J. ROBBINS and Alan Freberg, Plaintiffs,

v.

MOORE MEDICAL CORP., Mark E. Karp, Steven Kotler, Jerald K. Rome, Bruce Slovin, Robert H. Steele, Richard M. Tasso, Wilmer J. Thomas, Jr., Alan L. Feir, John A. Murray, and Peter C. Sutro, Defendants.

No. 91 Civ. 3701(MEL).

United States District Court, S.D. New York.

March 24, 1992.

Wechsler Skirnick Harwood Halebian & Feffer (Robert I. Harwood, Andrew Davidovits, of counsel), Wolf Popper Ross Wolf & Jones (Lester L. Levy, Wallace A. Showman, of counsel), New York City, for plaintiffs.

Weil, Gotshal & Manges (Dennis J. Block, Richard L. Levine, Beth J. Jacobwitz, Katherine S. Schieffelein, of counsel), New York City, for defendants Mark E. Karp, Steven Kotler, Jerald K. Rome, Bruce Slovin, Robert H. Steele, Richard M. Tasso, Wilmer J. Thomas, Jr., John A. Murray and Peter C. Sutro.

Greenberger & Forman (Robert W. Forman, of counsel), New York City, for defendant Moore Medical Corp.

LASKER, District Judge.

In this securities fraud case, Moore Medical Corporation ("Moore Medical") and its numerous individual codefendants move to dismiss the complaint[1] pursuant to Rules 12(b)(6) and 9(b), Fed.R.Civ.P.

The motion is denied.

---

**1.** Harold Robbins and Alan Freberg each filed essentially identical complaints against Moore

**182**

## I.

Plaintiffs are shareholders who bought stock in Moore Medical, a pharmaceuticals company, during the asserted class period of May 10, 1988 through March 16, 1991. Their claim arises from losses Moore Medical suffered from its acquisition, operation and resale of a subsidiary generic drug manufacturing company, West-ward Incorporated ("West-ward").

Plaintiffs allege two types of mutually reinforcing deceit by defendants during the purported class period: first, that Moore Medical fraudulently made public announcements and filed documents with the Securities and Exchange Commission (SEC) identifying factors, unrelated to West-Ward, as the significant impediments to Moore Medical's profitability when in fact West-ward seriously diminished its current and future profitability, or else downplaying the severity of problems at West-ward, thereby creating the false perception among investors that correction of the disclosed factors would lead to improved performance by Moore Medical overall. Second, plaintiffs allege that statements of optimism concerning West-ward's and Moore Medical's future results, which were contained in various Moore Medical announcements and SEC documents and typically accompanied any limited acknowledgements of West-ward's shortcomings which were made, were inconsistent with the company's knowledge that West-ward's poor results would continue and would significantly lessen Moore Medical's earnings. Among West-ward's alleged undisclosed problems were ongoing inventory problems, underutilization of production capacity, and regulatory difficulties with the Food and Drug Administration (FDA). It is alleged that the goal and result of this scheme was an inflated market price for Moore Medical stock.

The alleged fraudulent statements and omissions include: (1) quarterly and annual reports for 1988 and the first two quarters of 1989, which, it is claimed, failed to disclose serious long-term difficulties at West-ward and which misleadingly identified unrelated past problems which had been corrected as the significant barriers to profitability that Moore Medical faced; (2) statements for the third quarter of 1989 which represented that although earnings were "depressed" by losses at West-ward and that West-ward had yet to generate a profit, a new marketing program made Moore Medical "confident that West-ward will achieve acceptable levels of profitability," and which failed to reveal continuing problems at West-ward; (3) statements for the fourth quarter of 1989 and the 1989 annual report which, although blaming company-wide losses partly on "continuing losses" at West-ward, falsely expressed confidence in the subsidiary's future profitability, particularly in light of its growing sales, and failed to reveal ongoing impediments to improved results at the subsidiary; (4) first quarter 1990 statements which omitted mention of increased losses at West-ward and improperly stated, "We are encouraged by the improved business of our West-ward manufacturing operation where sales for the quarter were 75 percent above a year ago"; (5) second quarter 1990 statements that noted disappointment with West-ward's continued "operation at a loss" despite increased sales, but failed to reveal regulatory difficulties the subsidiary was experiencing with the FDA; (6) third quarter 1990 statements dated November 8, 1990 revealing a pre-tax loss of $453,000 at West-ward, which depressed Moore Medical's earnings by ten cents per share, and announcing that Moore Medical would consider options including the sale of West-ward, but saying nothing of the severity of West-ward's problems or the magnitude of loss likely to result from such a sale.

The third quarter 1990 statement was the last quarterly filing or announcement

and individuals involved with the company, and each *sought certification of the case as a class* action pursuant to Rule 23, Fed.R.Civ.P. The two cases, 91 Civ. 3379 (MEL) (Freberg complaint) and 91 Civ. 3701 (MEL) (Robbins complaint), have been consolidated under the file number 91 Civ. 3701, and by stipulation the Robbins complaint is agreed to be the operative complaint for purposes of the pending motion to dismiss. The question of certification has been reserved until resolution of the motion to dismiss.

made before Moore Medical on or about March 6, 1991 announced the sale of West-ward at a loss to shareholders of $6.6 million, and also announced operating losses at West-ward of $2.1 million. Plaintiffs allege that the price of Moore Medical common stock fell from 6⅝ to 5¾ per share following this disclosure.

Plaintiffs allege that these statements and omissions violated § 10(b) of the Securities Act of 1934, 15 U.S.C. § 78j(b), and of Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5 (by both Moore Medical and the individual defendants), and § 20 of the same Act, 15 U.S.C. § 78t (by the individual defendants).

Moore Medical moves pursuant to Rule 12(b)(6) to dismiss the complaint on the grounds that: 1) Moore Medical had no duty to disclose its subsidiary's results separately from its own when the subsidiary's results were not material to the overall condition of the company; 2) Moore Medical made full disclosures of West-ward's performance whenever it was material to Moore Medical's overall results; 3) the optimistic statements made by the company and its officials as to West-ward's and Moore Medical's future performance are not actionable because they were neither factual assertions nor bad-faith expressions of opinion, and therefore cannot be deemed fraudulent within the meaning of § 10(b); 4) Robbins has not alleged a specific date on which he purchased Moore Medical stock, and accordingly has failed adequately to allege that his purchase was in reliance on any statements or omissions made by defendants; and 5) plaintiffs have failed to allege a "control person" claim under § 20.

Defendants also move to dismiss the complaint under Rule 9(b) for the following reasons: 1) the complaint provides mere conclusory allegations of fraud without alleging sufficient facts to show fraud or to support allegations of defendants' scienter; 2) the complaint is pleaded on information or belief without sufficient reference to the facts or sources underlying the complaint; 3) the complaint merely alleges "fraud by hindsight" which as a matter of law is inadequate under Rule 9(b).

Part II of this opinion considers defendants' objections pursuant to Rule 12(b)(6) and part III considers those arising under Rule 9(b).

## II.

*A. Sufficiency of Disclosures Concerning West-ward and Applicability of § 10(b) to Optimistic Statements*

■ In its Rule 12(b) motion to dismiss, Moore Medical divides plaintiffs' allegations into two categories: the first consisting of alleged nondisclosure of material information as to West-ward's problems; the second including optimistic statements as to West-ward's future performance.

While there is case law which addresses each type of deception separately, our reading of the complaint suggests a claim that the omissions and optimistic statements operated in tandem to deceive investors into believing that West-ward suffered no serious long-term problems and soon would contribute to greater profits for Moore Medical, when in fact the subsidiary was beset with numerous severe difficulties, had no realistic chance of becoming profitable and in fact likely would hinder Moore Medical's overall results. Accordingly, in this opinion the sufficiency of the allegations is considered jointly.

As to the alleged omissions, Moore Medical emphasizes the proposition that neither the law nor accounting norms impose a duty to reveal results of relatively small subsidiaries like West-ward and asserts that in any event it fully disclosed all information about West-ward that was material to investors in Moore Medical.[2] In the absence of a duty to disclose, Moore Medical argues, it cannot be held liable for the omissions alleged. *See, e.g., Levine v. NL Industries, Inc.,* 717 F.Supp. 252, 254 (S.D.N.Y.1989), *aff'd,* 926 F.2d 199 (2d Cir.

---

**2.** According to Moore Medical, while in 1988 it had assets totalling $81 million, it acquired West-ward for under $6.5 million.

1991) ("In order for the omission to be actionable, the omitted information must have been material, and there must have been a duty to disclose it"). As to the allegedly fraudulent statements of optimism, Moore Medical argues that they were non-actionable expressions of opinion rather than falsehoods or bad faith assertions.

■ The disclosure requirements of the securities laws do not impose a general duty on a corporation to disclose all material information, but require that whatever statements the corporation does issue be truthful and complete, and not materially misrepresent the facts existing at the time of the announcement. *Schlanger v. Four–Phase Systems, Inc.*, 582 F.Supp. 128, 133 (S.D.N.Y.1984); *Roeder v. Alpha Industries, Inc.*, 814 F.2d 22, 26 (1st Cir.1987). Accordingly, regardless whether Moore Medical had a specific duty to reveal the type of information whose omission is alleged, failure to disclose the information would be actionable if its disclosure were necessary to make statements made by the corporation truthful and complete and not misleading.

■ Statements of opinion or expectation as to future events, which are not strictly factual and therefore cannot be evaluated for truth or falsehood, are deemed fraudulent under § 10(b) only where "the defendant disseminated the forecasts knowing they were false or that the method of preparation was so egregious as to render their dissemination reckless," *Estate of Detwiler v. Offenbecher*, 728 F.Supp. 103, 137 (S.D.N.Y.1989), and are not actionable merely because events unfold differently from the stated expectation. *See, e.g., Friedman v. Mohasco Corp.*, 929 F.2d 77, 79 (2d Cir.1991). Moreover, where optimistic statements are coupled with revelations of adverse developments for a business, those statements "bespeak[ ] caution" on the part of investors and make the required showing of fraud all the more unlikely. *See Schwartz v. Novo Industri A/S*, 658 F.Supp. 795, 798 (S.D.N.Y.1987) (Weinfeld, J.) (fraud claim undercut by defendant's statement that major customer had developed alternate source for product despite simultaneous claim that business would not be materially affected).

■ A misrepresentation or misleading omission is material if a reasonable investor would consider it significant in the total mix of information influencing his or her decision to purchase or sell a security. *Basic, Inc. v. Levinson*, 485 U.S. 224, 234, 108 S.Ct. 978, 984, 99 L.Ed.2d 194 (1988); *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976). The Supreme Court has described the issue of materiality as a mixed question of law and fact which is only appropriate for resolution by summary judgment (or, by logical extension, motion to dismiss) where "the established omissions are 'so obviously important to an investor, that reasonable minds cannot differ on the question of materiality.' " *TSC Industries*, 426 U.S. at 450, 96 S.Ct. at 2133.

Neither the complaint nor plaintiffs' argument in opposition to the present motion disputes that Moore Medical's announcements of financial results, its annual reports and its SEC filings all accurately presented its aggregate financial results for the relevant periods. Plaintiffs claim that Moore Medical's assertion or implication that its disappointing performance was caused by identified factors which had been corrected, in conjunction with the company's failure to reveal West-ward's severe problems, fraudulently created a false belief among investors that all significant problems Moore Medical faced had been resolved and that the company's performance would dramatically improve.

Securities fraud claims have been dismissed on the grounds of immateriality under the stringent standard set forth above, although that course is unusual. For example, allegations that a large chemical company did not specifically reveal the risk and likely cost of an accident at one of its facilities was ruled "immaterial as a matter of law" and dismissed where the nature of the defendant's business naturally entailed the kind of risk whose omission was al-

leged. *See In re Union Carbide Class Action Securities Litigation,* 648 F.Supp. 1322 (S.D.N.Y.1986). And in *I. Meyer Pincus & Assoc., P.C. v. Oppenheimer & Co.,* 936 F.2d 759 (2d Cir.1991), *petition for cert. filed* (Feb. 6, 1992), the Court of Appeals held that dismissal was appropriate where the alleged misleading statement or omission was a prospectus statement that "The shares of closed-end investment companies frequently trade at a discount from or premium to their net asset value" and where in fact, plaintiffs alleged, it was highly unusual for closed-end funds to trade at a premium. 936 F.2d at 761. The court's review of the prospectus, including the statement identified in the complaint, led it to conclude that the prospectus in no way predicted that shares of the fund would trade at a premium, and indeed "besp[oke] caution." 936 F.2d at 763.

The allegations here, however, unlike those in the cases defendants cite dismissing securities fraud complaints on materiality grounds, claim that defendants repeatedly omitted material information that would inform investors of significant problems likely to present an ongoing burden to Moore Medical, while presenting a picture of a company essentially healthy but for a few problems whose imminent correction would result in greater profitability. It is alleged that even when difficulties at West-ward were acknowledged, the disclosures were made in general terms, did not refer to specific problems that were known to the company, and often were accompanied by optimistic statements made recklessly or in bad faith. Neither the statements made by Moore Medical nor the nature of its business provided the sort of warnings of possible trouble afforded in *Union Carbide* and *Pincus.*

Moore Medical has presented a close question, and may well succeed on summary judgment following development of the evidence as to the existence or severity,

relative to Moore Medical, of the alleged nondisclosed problems at West-ward. As stated in the complaint, however, plaintiffs' claims of misleading omissions, when coupled with the alleged unfounded optimistic statements, cannot be dismissed as so obviously insignificant that reasonable minds could not find the omissions material. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957) (court must accept as true all well-pleaded allegations of complaint, and may not dismiss unless it appears plaintiffs can prove no set of facts which would entitle them to relief). Plaintiffs have alleged that West-ward was continually beset with insurmountable problems involving its inventory, utilization of production capacity, and product quality and FDA regulation, and that Moore Medical and other defendants nevertheless, despite knowledge of these difficulties, presented both the subsidiary's and Moore Medical's outlook as healthy given the solution of a few identified unrelated problems. Moreover, the alleged magnitude of losses at West-ward which eventually was revealed and the long-term nature of the problems identified supports the claim that defendants knew of West-ward's weakness before they acknowledged it. These allegations and their materiality to Moore Medical overall are presented somewhat generally, and the probability of proof may appear remote in light of West-ward's small size compared to Moore Medical, but plaintiffs have adequately stated a claim.

Plaintiffs' argument is particularly strong as to Moore Medical's statements for 1988 and the first two quarters of 1989, during which no disclosures of particular difficulties at West-ward were made.[3] On the other hand, it could well have been legitimate not to make any comment

However, in a number of subsequent disclosures Moore Medical did discuss the existence of difficulties at West-ward. In its disclosures for the third quarter of 1989,

---

3. Moore Medical's argument on this motion to dismiss relies on portions of its public statements and SEC filings not referred to in the complaint, but which were available to and clearly known of by Robbins. This reliance is permissible without transforming a Rule 12(b)(6) motion into one under Rule 56, Fed. R.Civ.P. *See Cortec Industries, Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991); *Kramer v. Time Warner Inc.,* 937 F.2d 767 (2d Cir.1991).

for example, Moore Medical stated that West-ward sustained "losses" and suffered from "low capacity utilization" which depressed Moore Medical's overall results, although the company stated at the same time that "We recently began an aggressive marketing program and are confident that West-ward will achieve acceptable levels of profitability." Similarly, the announcement of fourth quarter 1989 results noted "continuing losses" at West-ward but stated that "with West-ward's sales growing, we are confident about returning to profitability in 1990," and in its 1989 Form 10K Moore Medical noted that in 1989 it suffered a loss attributable to West-ward of 46 cents per share.

The company made similar statements in its Form 10Q for the second quarter of 1990, which noted that "[w]e have been disappointed with our West-ward manufacturing operation which continues to operate at a loss despite higher sales levels." In the third and fourth quarters of 1990 and in the 1990 year-end statements issued by the company, Moore Medical acknowledged losses suffered by West-ward. The fourth quarter and annual announcements were made in late March 1991, after Moore Medical's March 6 announcement of its plans to sell West-ward at a substantial loss.

Defendants argue that these disclosures reveal the information that plaintiffs complain was improperly omitted, and that therefore the complaint must be dismissed at least as to the allegations relating to the period after Moore Medical's third quarter 1989 statements. They maintain that although the statements did not reveal the exact severity or nature of West-ward's difficulties they did acknowledge the existence of the subsidiary's problems in general terms, and that the mere failure to provide full detail concerning acknowledged difficulties cannot form the basis of a valid securities fraud complaint. *Cf. Backman v. Polaroid Corp.*, 910 F.2d 10, 16 (1st Cir.1990) (en banc) ("Disclosing that [the product] was being sold below cost was not misleading by reason of not saying how much below").

Plaintiffs respond that, particularly when considered in light of the optimistic statements which accompanied the revelations of West-ward's difficulties, defendants' failure to reveal the severity of the subsidiary's problems fraudulently created in investors a false impression that West-ward's problems could easily be surmounted and that the subsidiary would soon become profitable.

If Moore Medical had simply revealed West-ward's poor performance without quantification or any other statements concerning the subsidiary, its revelations might well have been sufficient under § 10(b) as a matter of law. However, according to the complaint defendants' statements did not occur in isolation; the revelation of unquantified difficulties at West-ward omitted reference to particular ongoing problems and was coupled with optimistic statements downplaying the extent of the company's troubles, giving an allegedly false impression that West-ward's difficulties were relatively minor and likely to be resolved. These optimistic statements are asserted to have been made with knowledge that there was no basis for them, or with reckless disregard of facts rendering West-ward's future success all but impossible, and plaintiffs have alleged particular shortcomings at West-ward that were known or knowable at the time of the assertions. Those known or knowable problems include West-ward's inventory levels and utilization of production capacity and occasional problems with the FDA. Finally, plaintiffs adequately claim that the assertions of likely optimism were made without a good faith basis.

The combination of nondisclosure of alleged problems and false statements of optimism could, if properly substantiated, work a fraud cognizable under § 10(b). Accordingly, the complaint's § 10(b) allegations satisfy the requirements of Rule 12(b)(6).

### B. Robbins' Failure to Allege His Date of Purchase

█ Moore Medical also argues that Robbins' complaint must be dismissed be-

cause Robbins merely alleges that he purchased shares during the class period, but has not specified the date of purchase. It argues that this failure renders insufficient the complaint's allegation of Robbins' reliance on the statements and omissions or that his purchase of Moore Medical stock was "in connection with" them.

A complete failure to allege when or in what circumstances purchases were has been held insufficient under Rule 9(b).[4] *See, e.g., Morin v. Trupin*, 747 F.Supp. 1051, 1062 (S.D.N.Y.1990). However, here Robbins has alleged that he purchased Moore Medical stock during the class period, Compl. ¶ 5, and in reliance on those statements. Compl. ¶ 73. Those allegations state a claim under § 10(b). *See Zimmerman v. Prime Medical Services, Inc.*, 729 F.Supp. 23, 25 (S.D.N.Y.1990) (denying motion to dismiss under Rules 9(b) and 12(b)).[5]

■ Moore Medical also argues that Robbins or Freberg do not have standing to assert class claims which arose from statements made after he purchased Moore Medical stock. *See Levine v. NL Industries, Inc.*, 720 F.Supp. 305, 308 (S.D.N.Y. 1989) ("[R]epresentations [made after named plaintiff's purchase date] are not actionable under section 10(b) and Rule 10b–5 by a class represented by [named plaintiff]"); *see also Denny v. Barber*, 576 F.2d 465, 468–69 (2d Cir.1978) (plaintiff who purchased shares before alleged misleading statements not proper representative of class injured by those statements).

Plaintiffs distinguish cases relied upon by defendants as involving no allegations of a common scheme to defraud a class of plaintiffs (an allegation made at ¶ 18 of the Robbins Complaint). *Denny*, by the Court of Appeals for this Circuit, did involve a plaintiff who bought stock before *any* alleged misstatements, *see Denny*, 576 F.2d at 468–69, and accordingly is not applicable to this case. *Levine*, however, is not so

readily distinguishable. In *Levine* Judge Cedarbaum granted summary judgment as to five in a series of nine alleged misrepresentations because the five statements occurred after the named plaintiff's date of purchase and therefore "are not actionable under section 10(b) and Rule 10b–5 by a class represented by [plaintiff]." *Levine*, 720 F.Supp. at 308.

However, other courts have ruled that class representatives are entitled to assert § 10(b) claims arising from statements made both before and after the purchase date if the statements allegedly were made in the furtherance of a common scheme to defraud. *See Nicholas v. Poughkeepsie Savings Bank/FSB*, 1990 WL 145154, *5, 1990 U.S.Dist. LEXIS 12677, *14–15, Fed. Sec.L.Rep. (CCH), ¶ 95,606 (S.D.N.Y.1990). In that case, Judge Sweet held:

> Nicholas has alleged a common course of conduct by defendants to harm the Class. Whether plaintiff and other class members bought early in the Class Period or late, they are all alleged to have been injured by the inter-related misstatements and omissions.... [D]efendants' argument implies that only someone who bought on the last day of a Class Period would be able to bring an action.... Such arguments have been made and rejected in other courts.

*Id.*, 1990 WL 145154 at *5, 1990 U.S.Dist. LEXIS 12677 at *15 (*citing Gould v. Marlon*, Fed.Sec.L.Rep. (CCH) ¶ 93,408 at 97,-126, 1987 WL 34631 (D.Nev.1987); *Shamberg v. Ahlstrom*, 111 F.R.D. 689, 697 (D.N.J.1986)).

■ The plaintiffs here meet Judge Sweet's criteria, and it is not unreasonable of them to have pressed the claims of all purchasers of Moore Medical stock during the class period. Nevertheless, I conclude that the date of purchase may, but need not necessarily, be significant, and that defendants are entitled to a specification of

---

**4.** Defendants nevertheless seek dismissal pursuant to Rule 12(b)(6) on this ground. The ensuing discussion applies to either Rule.

**5.** Moore Medical also objects that Freberg's complaint must be dismissed as to any state-

ments made after his alleged purchase date of July 27, 1989. Because the Freberg and Robbins actions have been consolidated under Robbins' complaint we need not address the validity of Freberg's complaint.

the date so that they can determine the effect of the date of purchase with regard to the validity of Robbins' complaint and what action, if any, they (the defendants) should take because of the particular date in question.[6] Although amendment of the complaint as to this item may not be necessary, plaintiffs are instructed promptly to file an affidavit indicating Robbins' date(s) of purchase.

### C. Section 20 "Controlling Person" Claim

■ Plaintiffs allege that the individual defendants have violated § 20(a) of the 1934 Act, 15 U.S.C. § 78t(a). Section 20(a) provides, "Every person who, directly or indirectly, controls any person liable under any provision of this chapter ... shall also be jointly and severally liable with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action."

■ To establish a claim under § 20, a plaintiff must allege (1) a primary violation, (2) scienter, and (3) control of the primary violator by the defendant. *See Index Fund, Inc. v. Hagopian*, 609 F.Supp. 499, 511 (S.D.N.Y.1985); *see also Lanza v. Drexel & Co.*, 479 F.2d 1277, 1299 (2d Cir. 1973). Defendants challenge the sufficiency of plaintiffs' claims as to each of these elements.

Plaintiffs have alleged a primary violation of § 10(b).

The law governing the sufficiency of pleadings of scienter by controlling persons is unclear. Eighteen years ago the Court of Appeals for this Circuit ruled that a plaintiff must allege that the alleged controlling persons were "in some meaningful sense culpable participants in the fraud perpetrated by controlled persons," *Gordon v. Burr*, 506 F.2d 1080, 1085–86 (2d Cir.1974) (reversing finding of control person liability for want of evidence of defendant's knowledge of or participation in

fraud), a ruling that has retained some vitality. *See, e.g., Brickman v. Tyco Toys, Inc.*, 731 F.Supp. 101, 106 (S.D.N.Y.1990). Other well-reasoned opinions in this District, however, have argued that § 20 "now only requires that the plaintiff allege and prove control, leaving it to the defendant to plead and prove good faith and lack of participation." *Healey v. Chelsea Resources Ltd.*, 736 F.Supp. 488, 495 (S.D.N.Y.1990) (Carter, J.) (citing *Marbury Management, Inc. v. Kohn*, 629 F.2d 705, 716 (2d Cir.), *cert. denied sub nom. Wood Walker & Co. v. Marbury Management, Inc.*, 449 U.S. 1011, 101 S.Ct. 566, 66 L.Ed.2d 469 (1980). *See also Borden, Inc. v. Spoor Behrins Campbell & Young*, 735 F.Supp. 587, 590 (S.D.N.Y.1990) (Conner, J.).

The complaint here is adequate under either standard. It recites the position of each individual defendant at Moore Medical (all were directors or officers during at least part of the class period) and identifies those defendants who signed statements made by the company or otherwise issued statements alleged to be misleading. It goes on to aver their knowing or reckless participation in the alleged scheme as follows:

18. By reason of their positions as directors and senior executive officers of Moore Medical, each of the individual defendants possessed intimate knowledge of, or approved and ratified the deceptive and manipulative acts, practices and transactions complained of herein, and the material omissions and the affirmative false and misleading statements contained in the reports and releases of the Company, which constituted a course of conduct designed to defraud and deceive the public and in particular the members of the Class.

63. Defendants were aware of or recklessly disregarded facts concerning Moore Medical's failure to turn around the business of West-ward, and the misleading nature of the statements they

---

**6.** These comments do not go to the merits of plaintiffs' separate motion for class certification, which has been reserved pending resolution of the current motion.

caused to be issued as alleged in paragraphs 25 through 62 above.

68. Defendants had actual knowledge, or recklessly disregarded facts available to them, of West-ward's continuing failure to generate profits and mounting operating losses and the false and misleading nature of the Company's public statements as set forth in this complaint.

In addition, ¶¶ 69–71 of the Complaint allege that each individual defendant knew of and knowingly participated in the alleged scheme with the purpose of materially misleading the investing public and inflating the price of Moore Medical stock.

In sum, plaintiffs maintain that each individual defendant by virtue of his status as a director or officer of Moore Medical can be inferred to have exercised control within the meaning of § 20(a), and to have done so with the requisite scienter. *See Savino v. E.F. Hutton & Co.*, 507 F.Supp. 1225, 1243 (S.D.N.Y.1981) ("proof of 'control by status', as distinct from 'actual control,' is all that is required to make out a prima facie case under Section 20(a)"). They note that the inference of control and scienter is particularly plausible because the misleading statements alleged were SEC quarterly and annual filings and annual reports and press releases, all of which "may be presumed to entail the collective actions of the directors [and] officers." *Quantum Overseas, N.V. v. Touche Ross & Co.*, 663 F.Supp. 658, 667–68 (S.D.N.Y.1987) (rejecting Rule 9(b) challenge to complaint failing to particularize each defendant's role in dissemination of allegedly fraudulent documents).

Defendants respond generally that the pleadings are factually insufficient to support an inference that the individual defendants acted with the requisite scienter. However, this contention is at odds with the authority cited above, and with the logical proposition that those with responsibility for the reports of a company may at least be presumed to be familiar with the contents of and basis for those reports.

As to the issue of control, defendants argue that the mere allegation that each individual defendant was a director of Moore Medical is insufficient to establish his control. *See Hemming v. Alfin Fragrances, Inc.*, 690 F.Supp. 239, 245 (S.D.N.Y.1988). That decision did state in dicta that "[a] person's status as an officer, director or shareholder, absent more, is not enough to trigger liability under § 20." *Id.* However, that observation addressed the evidence that must be presented at trial; the court simultaneously held that dismissal under Rules 9(b) and 12(b) was inappropriate where plaintiffs had alleged a misleading statement and individual defendants' positions of authority over the company because at the time of a motion to dismiss such pleadings were sufficient. *Id.*

Finally, defendants note that as outside directors, defendants Kotler, Slovin, Steele, Sutro, Tasso and Thomas had "no duty ... to insure all material adverse information about the corporation" was disclosed. *See Decker v. Massey–Ferguson, Ltd.*, 681 F.2d 111, 119 (2d Cir.1982). It is unclear how this observation relates to the control element of a § 20 claim; the *Decker* court dismissed portions of a complaint alleging direct or aider and abettor liability of outside directors pursuant to § 10(b) for want of sufficient allegations of the outside directors' knowing and substantial involvement in specific misrepresentations. Plaintiffs here, by contrast, have alleged that each individual defendant signed at least one of the allegedly fraudulent documents, which, they argue, supports the inference that defendants exercised a degree of control over Moore Medical's operations and representations. Such allegations are sufficient at the pleadings stage under § 20(a). *See Zimmerman v. Prime Medical Services, Inc.*, 729 F.Supp. 23, 25 n. 1 (S.D.N.Y. 1990).

### III.

Defendant also moves to dismiss pursuant to Rule 9(b) for a variety of asserted deficiencies, some of which are similar to those discussed in the preceding section.

■ As an initial matter, we reject plaintiff's contention that Rule 9(b) does not apply to cases brought under § 10(b). Plaintiffs present three arguments in support of this position: (1) because in certain circumstances recklessness can satisfy the

scienter requirement of § 10(b), such claims are not an "averment of fraud or mistake" within the meaning of Rule 9; (2) the Supreme Court's recent decision in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* —— U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), by establishing a statute of limitations period with a firm period of repose in § 10(b) claims, rejected "bedrock principles" of common law fraud such as equitable tolling and fraudulent concealment doctrine and thus widened the gulf between securities fraud actions and "real" fraud; (3) in securities fraud cases plaintiffs typically lack access to detailed information concerning defendants' knowledge and behavior needed to plead with particularity the full details of the fraudulent scheme they allege until discovery has been taken.

The applicability of Rule 9(b) to securities fraud cases is firmly established in all Circuits including this one, and has featured prominently in recent important securities fraud decisions. *See, e.g., O'Brien v. National Property Analysts Partners,* 936 F.2d 674 (2d Cir.1991). *Lampf* does not comment on the issue directly and contains nothing to weaken the established practice of requiring particular statements of the circumstances constituting securities fraud.

As to plaintiffs' contention that Rule 9(b)'s strictures are too difficult for securities fraud claimants to meet because of plaintiffs' frequent inability to determine the exact mechanisms of the alleged fraud, plaintiffs are adequately protected by the Rule's provision for general averment of states of mind and courts' acceptance of pleadings on information and belief when facts are peculiarly within the opposing party's knowledge. *See Luce v. Edelstein,* 802 F.2d 49, 54 n. 1 (2d Cir.1986).

### A. Sufficiency of Fraud and Scienter Allegations

 Moore Medical argues that plaintiffs' allegations of fraud, and particularly their allegations of scienter, are conclusory and not supported by sufficient facts to conform with Rule 9(b).

In cases such as *O'Brien,* the Court of Appeals for this Circuit recently has taken a relatively stringent approach to Rule 9(b), with the Rule's acceptance of general pleadings as to scienter tempered by the requirement that plaintiffs "plead the factual basis which gives rise to a 'strong inference' of fraudulent intent." 936 F.2d at 676.[7] These requirements serve three principal purposes: "to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from 'improvident charges of wrongdoing,' and to protect defendant against the institution of a strike suit." *Id.*

As discussed above, the complaint here provides a thorough account of the various statements made by Moore Medical. It also specifies the harm plaintiffs suffered as a result of the allegedly fraudulent statements, with specific figures alleged both as to West-ward's operating losses and the eventual decline in Moore Medical's stock price.

The complaint is much less specific as to the material facts allegedly omitted from defendants' statements or contradicted by defendants' affirmative misrepresentations. It alleges in general terms that throughout the class period West-ward suffered ongoing problems involving its inventory levels, its productivity and regulation by the FDA, and that the various defendants knew of but concealed these difficulties. The only stated basis for plaintiffs' assertion of these difficulties or of their alleged materiality to Moore Medical is that the problems were eventually revealed when they caused Moore Medical to sell West-ward at a large loss, and that Moore Medical eventually revealed that West-ward never operated at a profit and was

---

7. *See also Wexner v. First Manhattan Co.,* 902 F.2d 169 (2d Cir.1990). *Compare Goldman v. Belden,* 754 F.2d 1059, 1069–70 (2d Cir.1985) (Rule 9(b) requires no more than specific statement of statements alleged to be misleading, how statements were misleading, and identity of defendants making statements or aiding or controlling those making statements so as to give "each defendant notice of precisely what he is charged with").

beset with numerous severe difficulties which it was unable to overcome. The complaint's allegations of defendants' scienter are stated generally and are supported only by the inference drawn from the severity and long-term nature of West-ward's problems that defendants must have known of such problems when they made the complained-of statements.

One may sympathize with the defendants, who are here subjected to serious allegations that entail significant litigation expense and effort based on a sparsely stated and somewhat conclusory complaint. Nevertheless, plaintiffs' allegations are sufficient under Rule 9(b). Plaintiffs have specified all elements of a § 10(b) claim which they can be expected to know at this point. They have alleged in general terms and on information and belief those elements which they cannot be expected to know now, namely the material information which they believe was available earlier to defendants and the defendants' scienter. Nothing more is required of them. *See Luce v. Edelstein,* 802 F.2d at 54 n. 1; *see also* Rule 9(b) (scienter may be pled generally).

Plaintiffs have met the requirement of *O'Brien* that a complaint must contain "an ample factual basis" for claims of scienter. 936 F.2d at 676. The complaint alleges that when Moore Medical finally announced its sale of West-ward it revealed problems that by nature were ongoing and that were far more severe than any previously announced or hinted at, and that Moore Medical suffered losses of a far greater magnitude than those previously announced. These claims support the inference that information as to the severity and causes of West-ward's troubles likely were known to defendants earlier but were concealed in order to support the price of Moore Medical stock.[8]

### B. Permissibility of Pleading on Information and Belief

Moore Medical argues that allegations based on information and belief are generally not permissible in fraud cases, *see Stern v. Leucadia Nat'l Corp.,* 844 F.2d 997, 1003 (2d Cir.), *cert. denied,* 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 109 (1988), and that Robbins' complaint does not fall within the exception to this rule permitting pleadings on information and belief as to facts which are "peculiarly within the opposing party's knowledge." *Wexner v. First Manhattan Co.,* 902 F.2d 169, 172 (2d Cir.1990). It is claimed that plaintiffs' allegations of fraud pleaded on information and belief are insufficient because they have not been "accompanied by a statement of facts upon which the [plaintiffs'] belief is founded." *Stern,* 844 F.2d at 1003.

As previously noted, plaintiffs have specified in detail the statements that were made and how plaintiffs were deceived and harmed by those statements, and have alleged generally the material information allegedly withheld and defendants' scienter based on inferences which, although far from certain in light of the facts alleged, are adequately supported at this stage in the proceedings.

### C. Fraud by Hindsight

█ Finally, defendants argue that the complaint alleges nothing more than "fraud by hindsight," which has been held an insufficient basis for pleading fraud under Rule 9(b).

It is firmly established that "there ... must be more than vague allegations that, as shown by subsequent developments, the corporation's true financial picture was not so bright in some respects as its annual reports [and interim financial statements] had painted and that the defendants knew, or were reckless in failing to know this." *Denny v. Barber,* 576 F.2d 465 (2d Cir.

---

**8.** Defendants argue that the alleged scheme would have been irrational for defendants to follow since West-ward's failure was to be announced within two years, and that therefore the alleged scheme cannot reasonably be inferred from the facts plaintiffs allege. This argument fails for two reasons: at the time of defendants' statements, defendants may not have expected to announce West-ward's problems, and irrational schemes have as much potential to defraud investors as do rational schemes.

1978); *see also Schwartz v. Novo Industri, A/S*, 635 F.Supp. 1463 (S.D.N.Y.1986). Defendants have cited numerous cases dismissing securities fraud complaints which, when described in broad outline form, appear similar to this one: the complaints allege that serious flaws which eventually surfaced in a business must have been known earlier and were not revealed, and that such omissions, or affirmative statements that all was well, support an inference of fraud. *See, e.g., Denny; Schwartz; Hershfang v. Citicorp*, 767 F.Supp. 1251 (S.D.N.Y.1991).

However, not every complaint which follows this broad outline need be invalid; the *Denny* court recognized that fraud by hindsight decisions "may or may not be consistent and ... necessarily rest[ ] on [their] particular facts." 576 F.2d at 470. Here plaintiffs have alleged specified statements to be false or misleading both in their affirmative optimism and in their omission of known problems; they have alleged the existence, severity and irremediability of certain problems which were not revealed; they have pointed to the eventual sudden revelation of problems of a far greater magnitude than was foreshadowed by any statements defendants did make; and the problems they allege are of a sort that it is not unreasonable to believe were ongoing and thus likely known to defendants before they were acknowledged.

To conclude that the complaint is sufficient does not constitute any finding as to the merits of the claim, but only that the plaintiffs have made allegations which meet the pleading requirements of the Federal Rules of Civil Procedure.

Accordingly, the motion to dismiss is denied.

It is so ordered.