Veronica ZUCKER, individually and on behalf of a class of others similarly situated, Plaintiff,

v.

Allan G. QUASHA, Jack E. Rosenfeld, Ralph Destino, J. David Hackman, S. Lee Kling, Theodore H. Kruttschnitt, Jeffrey Laikind, Elizabeth Valk Long, Edmund R. Manwell, Geraldine Stutz, Robert F. Wright, Wayne P. Garten,

Hanover Direct Inc., Sun Life Insurance Company of America, and Merril, Lynch, Pierce, Fenner & Smith, Inc. and Alex Brown & Sons, Inc., individually and on behalf of a class of underwriters similarly situated, Defendants.

Civ. No. 94–4301 (WGB).

United States District Court, D. New Jersey.

July 7, 1995.

Goldstein, Till & Lite by Allyn Z. Lite, Newark, NJ, for plaintiff.

Whitman Breed Abbott & Morgan by Stephen R. Lang, Eric M. Nelson, Andrew Muscato, John E. Tardera, Newark, NJ, for defendants Allan G. Quasha, Jack E. Rosenfeld, Ralph Destino, J. David Hackman, S. Lee Kling, Theodore H. Kruttschnitt, Jeffrey Laikind, Elizabeth Valk Long, Edmund R. Manwell, Geraldine Stutz, Robert F. Wright, Wayne P. Garten, Hanover Direct Inc., Sun Life Ins. Co. of America.

Skadden Arps Slate Meagher & Flom by Robert J. Del Tufo, Newark, NJ, for defendants Merril, Lynch, Pierce, Fenner & Smith, Inc. and Alex Brown & Sons, Inc.

## OPINION

BASSLER, District Judge:

Defendants move to dismiss Plaintiff, Veronica Zucker's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. This Court possesses jurisdiction over this action under 28 U.S.C. § 1331.

For the reasons set forth in this Opinion, Defendants' motion is **granted.**

## I. BACKGROUND

In deciding this motion to dismiss for failure to state a claim, the Court must accept all allegations made in the Complaint as true. *Markowitz v. Northeast Land Co.,* 906 F.2d 100, 103 (3d Cir.1990). Plaintiff, Veronica Zucker, purchased 3,000 shares of common stock of Defendant, Hanover Direct, Inc. ("HDI"), in a public offering that took place on March 31, 1994. Compl. ¶ 4. HDI conducts a mail-order retail business through numerous catalogs published by HDI, including *Domestications, Colonial Garden Kitchens, The Company Store, Hanover House, Gumps,* and *Tweeds.* Compl. ¶ 5.

At the public offering, Defendant, Sun Life Insurance Company of America ("SLIC"), sold 654,604 shares of common stock of HDI. Compl. ¶ 6. These shares were registered pursuant to a Form S–3 Registration Statement (No. 33–52353) ("Registration Statement") which became effective on March 31, 1994 and were offered for sale pursuant to a Prospectus dated March 30, 1994, distributed to the Plaintiff and others. Compl. ¶ 6. Each of the individually named Defendants is an executive of HDI who signed the Registration Statement. Compl. ¶¶ 7–18. Defendants, Merril, Lynch, Pierce, Fenner & Smith, Inc. ("Merril Lynch") and Alex Brown & Sons, Inc. ("Alex Brown"), acted as under-

writers in connection with the public offering. Compl. ¶¶ 19–20.

On March 31, 1994, HDI common stock was publicly offered at $6.375 per share. On August 15, 1994, the day after HDI filed a 10–Q quarterly report for the quarter and six month period ended July 2, 1994, the closing price of its stock on the New York Stock Exchange was $4.06 per share, representing a decline in value of 36% over four and a half months. Compl. ¶¶ 61–62.

Plaintiff brings this suit as a class action under Federal Rules of Civil Procedure 23(a) and (b)(3) "on behalf of all persons other than defendants, their family members, agents, and affiliates, who purchased the common stock of HDI on the Public Offering or thereafter through and including August 15, 1994 and who suffered damages as a result ..." Compl. ¶ 21. Plaintiff awaits class certification.

According to Plaintiff, Defendants violated applicable securities laws in connection with the public offering of HDI common shares held on March 31, 1994 because both the Registration Statement and the Prospectus were materially false and misleading in violation of 15 U.S.C. §§ 77k and 77*l*.

## II. *DISCUSSION*

### A. Standards Governing Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for a dismissal based upon the pleader's "failure to state a claim upon which relief can be granted." Since the long-established federal policy of civil litigation is to decide cases on the proofs, district courts generally disfavor Rule 12(b)(6) motions. *Melo–Sonics Corp. v. Cropp*, 342 F.2d 856 (3d Cir.1965); *Panek v. Bogucz*, 718 F.Supp. 1228, 1229 (D.N.J.1989).

In deciding a motion to dismiss for failure to state a claim, all allegations in the pleadings must be accepted as true and the plaintiff must be given the benefit of every favorable inference that can be drawn from those allegations. *See Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957); *Wisniewski v. Johns–Manville Corp.*, 812 F.2d 81, 83 n. 1 (3d Cir.1987); *Markowitz*,

906 F.2d at 103. "All the rules require is a short and plain statement of the claim that gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests." *Conley*, 355 U.S. at 47, 78 S.Ct. at 103.

Rule 12(b)(6) does not countenance "dismissals based on a judge's disbelief of a complaint's factual allegations." *Neitzke v. Williams*, 490 U.S. 319, 326–27, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

Accepting the facts in the pleadings as true and giving them all reasonable inferences, a court must dismiss under Rule 12(b)(6) "[i]f as a matter of law 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Neitzke*, 490 U.S. at 326–27, 109 S.Ct. at 1832.

Ordinarily, when a court relies upon matters outside of the pleadings, it must convert the motion to dismiss into a motion for summary judgment pursuant to Federal Rule of Civil Procedure 12(c). An exception to this rule, however, permits a Court to consider documents that are referred to in the complaint. *E.g., Pension Benefit Guaranty Corp. v. White Consolidated Industries, Inc.*, 998 F.2d 1192, 1196–97 (3d Cir.1993). Relying upon this exception, this Court will consider the Registration Statement, Prospectus, and 10–Q quarterly reports that are referred to in the Complaint and have been submitted as attachments to the declaration of Stephen R. Lang.

### B. Alleged Securities Fraud

In Count I of the Complaint, Plaintiff alleges that Defendants violated section 11(a) of the Securities Act of 1933, which provides a cause of action to purchasers of securities where:

> any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or

omitted to state a material fact ... necessary to make the statements therein not misleading ...

15 U.S.C. § 77k(a).

In Count II of the Complaint, Plaintiff asserts that Defendants violated § 12 of the Securities Act of 1933, which authorizes a cause of action against:

Any person who ... offers or sells a security ... by means of a prospectus ... which includes an untrue statement of a material fact or omits to state a material fact necessary to make the statements, in light of the circumstances in which they were made, not misleading ...

15 U.S.C. § 77l(2).

Finally, Count III asserts a claim against Defendant Quasha under section 15 of the Securities Act of 1933, which establishes joint and several liability, subject to certain exceptions, for "controlling persons" based upon violations of sections 11 and 12 of the Securities Act of 1933 that are committed by persons under their control. 15 U.S.C. § 77o. Plaintiff alleges that Quasha, as Chairman of the Board of Directors of HDI, was a controlling person responsible for the alleged violations contained in the Registration Statement and Prospectus. Compl. ¶¶ 71–72.

"At a minimum, each of the securities fraud provisions" allegedly violated by the Defendants "requires proof that the defendants made untrue or misleading statements or omissions of material fact." *In Re Donald J. Trump Casino Securities Litigation,* 7 F.3d 357, 368 (3d Cir.1993), *cert. denied,* — U.S. ——, 114 S.Ct. 1219, 127 L.Ed.2d 565 (1994).

■ A statement or omission is material if there is "a substantial likelihood that, under the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder." *Renz v. Schreiber,* 832 F.Supp. 766, 775 (D.N.J.1993) (citing *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976)). *See also Trump Casino,* 7 F.3d at 368 n. 10 (noting that materiality analysis for claims under §§ 10 and 10(b) of the Securities and Exchange Act of 1934 applies equally to claims

under §§ 11 and 12 of the Securities Act of 1933). A fact is material if its disclosure would have "significantly altered the 'total mix' of information available." *Craftmatic Securities Litigation v. Kraftsow,* 890 F.2d 628, 641 (3d Cir.1989). The materiality requirement is not met where the alleged omissions are "so obviously unimportant to an investor that reasonable minds cannot differ." *Trump Casino,* 7 F.3d at 369 n. 13.

■ To avoid committing misrepresentation, a defendant is not required to disclose all known information, but only information that is "necessary to make other statements not misleading." *Id.* at 640. In other words, to state a cause of action, a plaintiff must identify "an affirmative statement that is made misleading by the material omission." *In Re Union Carbide Class Action Securities Litigation,* 648 F.Supp. 1322, 1326 (S.D.N.Y. 1986). Moreover, "the allegations of the complaint are not read in isolation; they cannot be separated from the language of the prospectus, including whatever cautionary language appears in that text." *Trump Casino,* 793 F.Supp. 543, 553 (D.N.J.1992), *aff'd,* 7 F.3d 357 (3d Cir.1993).

■ A court evaluates whether the statement or omission was misleading at the time it was made. *Trump Casino,* 793 F.Supp. at 553. " '[F]raud by hindsight,' the attempt to impose liability on management for unrealized economic predictions, is not actionable." *Id.* at 551 (quoting *Sinay v. Lamson & Sessions Co.,* 948 F.2d 1037, 1040 (6th Cir.1991)).

Since the Prospectus, by its express terms, constitutes part of the Form S–3 Registration Statement filed with the Securities and Exchange Commission, the Court's discussion focuses upon the categories of misrepresentations alleged by the Plaintiff, rather than the counts of the Complaint or the type of document involved. *See* Lang Decl.Exh. 2 at 1. Plaintiff alleges that the Prospectus, incorporated by reference as part of the Registration Statement, was misleading in its omission of material information related to three topics: (1) HDI's rate of customer returns; (2) HDI's investments; and (3) HDI's proprietary customer lists.

### 1. HDI's Rate of Customer Returns

█ In the Prospectus/Registration Statement, HDI indicated that it maintained a policy of unconditionally guaranteeing its products and permitting dissatisfied customers to return merchandise "if not satisfied for any reason." Lang Decl.Exh. 2 at 29. In addition, HDI represented that the "return rate for 1993 was approximately 13% of gross shipments." Lang Decl.Exh. 2 at 29. The Prospectus/Registration Statement stated that the rate of returns in 1993 declined an unspecified amount in comparison to 1992. Lang Decl.Exh. 2 at 16.

According to Plaintiff, HDI's statement that 13% of its merchandise was returned by customers was allegedly false and misleading because the Prospectus/Registration Statement omitted the allegedly material fact that:

> by the time of the Offering the Company was experiencing a materially adverse trend with respect to returns. In fact, in the fiscal quarter ended April 2, 1994—a quarterly period which was more than 95% complete at the time of the Public Offering—HDI had experienced a 15% increase in returns compared to the first quarter of 1993, that is, an increase from 13% of gross shipments in the first quarter of 1993 to 15% of gross shipments in 1994.

Compl. ¶ 43.

As a threshold matter, the Court notes that Plaintiff does not contest the accuracy of the 13% return rate in 1993. Instead, Plaintiff argues that the statement was misleading in light of HDI's increased rate of returns, 15%, during the first quarter of 1994. Implicitly, Plaintiff's claim rests upon the contention that HDI had a duty to disclose a negative trend in returns for the quarter that was in progress and largely completed when the Prospectus/Registration Statement became effective on March 30, 1994.

Even before a quarterly report is formally issued, a corporate official can probably be held liable for statements that are false or misleading in light of complete quarterly data that has become available but has not yet been made public. *Renz*, 832 F.Supp. at 781. Courts have been reluctant, however, to impose liability based upon a corporate official's failure to disclose financial data for a fiscal quarter in progress. *E.g., id.; In re Worlds of Wonder Securities Litigation*, 35 F.3d 1407, 1418–19 (9th Cir.1994).

Where a corporate officer predicted a 17–18% growth in sales for an ongoing fiscal quarter seventeen days before the quarter closed, and the growth rate turned out to be 15%, 2% lower than his estimate, the court held that plaintiffs did not state a legitimate securities fraud claim. *Renz*, 832 F.Supp. at 781. The *Renz* court acknowledged, however, that if the official had predicted increased sales "after the end of the quarter on the basis of complete data covering the full quarter, though before the third quarter report was actually released, our decision would probably have been different." *Id.*

Unlike the sales projection at issue in *Renz*, HDI's representation concerning the 13% return rate for 1993 was not a prediction but a statement of historical performance. The Prospectus and Registration did not speculate as to current rates of return during the quarter in progress. Furthermore, HDI did not predict future return rates or suggest that the 1993 rate was expected to continue. Therefore, the subsequent increase in the return rate during the first quarter of 1994, in progress at the time of the Public Offering, did not render this statement of historical fact illegally false or misleading. *See* 15 U.S.C. §§ 77k(a), 77l(2).

Relying upon *Renz*, Plaintiff argues that because HDI's Prospectus/Registration Statement became effective less than three days before the close of the fiscal quarter, information regarding increased rate of returns must have been available and that HDI was obligated to disclose it. The existence of such an obligation is inconsistent with both *Renz* and the Ninth Circuit's decision in *Worlds of Wonder*. Both cases addressed projections of performance that failed to materialize. In *Renz* those projections were made publicly, while in *Worlds of Wonder*, they were made internally. *Renz*, 832 F.Supp. at 781; *Worlds of Wonder*, 35 F.3d at 1418–19 (claim alleged that the prospectus failed to disclose how far sales were lagging behind internal sales projections for the quarter in progress when company's bonds

were offered to the public). In both cases, plaintiffs did not succeed on their claims of false or misleading material omission. *Renz,* 832 F.Supp. at 781; *Worlds of Wonder,* 35 F.3d at 1418–19.

Plaintiff does not allege that Defendants made any public projections. In addition, Plaintiff attempts to distinguish *Worlds of Wonder* by expressly disavowing reliance upon any internal projections regarding rates of returns by HDI. Pl.Br. at 7.

In so doing, Plaintiff effectively concedes that the Complaint fails to allege that the Defendants' representation that HDI's return rate for 1993 was 13% was false and misleading when it was made at the end of March, 1994. *See Renz,* 832 F.Supp. at 781 (citations omitted). Regardless of whether a public offering occurs seventeen or only two days before the close of a fiscal quarter, data concerning a quarter that is in progress is necessarily incomplete. As a result, HDI was incapable of making anything more than projections regarding return rates for the first quarter of 1994 on March 30 when its Prospectus and Registration Statement became effective. Plaintiff expressly disavows reliance upon any internal projections by HDI and has failed to identify any other source of this information that HDI was allegedly obligated to disclose.

Consequently, the Court is at a loss to identify what information relating to return rates existed during the first quarter of 1994 that was omitted from the Prospectus and Registration Statement, allegedly rendering the statements related to the return rate in 1993 misleading. *See In re Keegan Management Co. Securities Litigation,* 794 F.Supp. 939, 946 (N.D.Cal.1992). Even if HDI had some duty to disclose financial data for a fiscal quarter in progress, Plaintiff has simply failed to allege any facts capable of supporting a reasonable inference that HDI's statement that the return rate for 1993 was 13% was misleading at the time it was made. *See Trump Casino,* 793 F.Supp. at 553.

Since Plaintiff has failed to establish, as a matter of law, that HDI made an affirmative statement in the Prospectus and Registration Statement related to the rate of return on HDI's merchandise that was misleading, this Court need not address materiality, the second element of a claim under sections 11(a) and 12. To the extent that Plaintiff's claims rely upon representations related to return rates, they are dismissed.

### 2. HDI's Investments

■ In addition, Plaintiff alleges that the Prospectus and Registration Statement were false and misleading because they omitted material facts related to the risks associated with HDI's investments in two companies, Boston Publishing Company ("BPC") and Aegis Safety Holdings, Inc. ("Aegis"). According to Plaintiff, the Prospectus and Registration Statement failed to disclose the material fact that "BPC was in precarious financial straits on the date of the Public Offering ... [which] caused a material risk to HDI of default by BPC." Compl. ¶ 48. BPC allegedly filed for bankruptcy in August, 1994, four months after the effective date of the Prospectus and Registration Statement. Compl. ¶ 49. Similarly, Plaintiff alleges that Aegis was in a precarious financial condition when the Prospectus and Registration Statement were issued, evidenced by HDI's disclosure in its 10–Q Statement for quarter the ending in July, 1994, that Aegis had breached certain loan covenants and that HDI "was negotiating a restructuring of the loan agreement." Compl. ¶ 51.

In determining whether a securities violation has occurred, the Court's inquiry appropriately begins with the affirmative statements contained in the Prospectus and Registration Statement allegedly made false or misleading by material omissions. *See In Re Union Carbide Class Action Securities Litigation,* 648 F.Supp. at 1326.

With respect to HDI's investment in BPC, the Prospectus/Registration Statement stated that HDI had acquired a 20% equity interest in BPC in February, 1994, in exchange for a "secured three-year revolving credit facility of up to $3 million, a secured $.75 million short-term loan, and a $.5 million convertible note." Lang Decl.Exh. 2 at F–13. In addition, HDI agreed to provide BPC with access to HDI's proprietary customer lists and catalog production assistance.

Lang Decl.Exh. 2 at 12, F–13. Finally, the Prospectus/Registration Statement represented that "BPC had approximately $12 million (unaudited) in revenues in 1993." Lang Decl.Exh. 2 at 12, F–13.

Regarding Aegis, the Prospectus/Registration Statement indicated that HDI had acquired 20% of Aegis' outstanding stock in exchange for financing by HDI. Long.Decl. at Exh. 2 at 11–12, F–13. Furthermore, the Prospectus/Registration Statement represented that "Aegis had approximately $9 million in net sales for the eleven months ended January 1, 1994." Long decl. Exh. 2 at 12, F–13.

Plaintiff does not contend that HDI misrepresented the terms of its agreement with either BPC or Aegis. Moreover, Plaintiff does not contend that Defendants made predictions about the future performance of either BPC or Aegis that did not subsequently materialize.

Rather, Plaintiff's claim apparently rests upon the contention that HDI's statements of BPC and Aegis' revenues, standing alone, were misleading because the Prospectus/Registration Statement omitted negative financial data that would have cast doubt upon BPC and Aegis's ability to meet their loan obligations to HDI. In other words, Plaintiff claims that the Prospectus/Registration Statement failed to disclose the allegedly material risks posed by HDI's investments in BPC and Aegis.

█ As an outgrowth of the requirement that a statement must be materially misleading at the time it was made for liability to attach, courts have held that:

> omissions that create a misleading impression—particularly one that is misleading *only in hindsight*—are not sufficient to constitute the basis of a securities action under section 11 or section 12(2).

*In re Bank of Boston Securities Litigation,* 762 F.Supp. 1525, 1538 (D.Mass.1991) (citations omitted); *see also Spielman v. General Host Corp.,* 402 F.Supp. 190, 194 (S.D.N.Y. 1975), *aff'd,* 538 F.2d 39 (2d Cir.1976) (per curiam). In order to prevail, a plaintiff must show that the omitted information in fact existed at the time that the allegedly mis-

leading statement was made. *In re Keegan Management,* 794 F.Supp. at 946; *c.f. Laker v. Freid,* 854 F.Supp. 923, 931 (D.Mass.1994) (plaintiff must do more than make general averments of falsity to support 10b–5 claim; plaintiff must set forth specific facts to show statement was materially misleading). "Even section 11 . . . , 15 U.S.C. § 77k, which provides strict liability against the issuer of stock for misstatements in the prospectus, does not impose liability for the omission of material information which was unknown to, and not reasonably discoverable by, the defendants." *In re Keegan Management,* 794 F.Supp. at 946.

In the Complaint, Plaintiff does not allege any specific facts that directly support the claim that BPC and Aegis were in "precarious" financial condition when the public offering occurred on March 31, 1994. Rather, Plaintiff relies upon an inference based upon subsequent events. Plaintiff argues that Aegis' breach of certain loan covenants and BPC's bankruptcy, both revealed in HDI's 10–Q statement, effective August 15, 1994, indicates that both companies must have been financially unsound four months before, when the public offering occurred.

In opposition to dismissal, Plaintiff argues that courts routinely permit subsequent filings with the Securities and Exchange Commission (SEC) to provide the basis for securities fraud claims. *E.g., Robbins v. Moore Medical Corp.,* 788 F.Supp. 179 (S.D.N.Y. 1992); *Serls v. Glasser,* Fed.Sec.L.Rep. (CCH) ¶ 97,358 (N.D.Ill.1993) (unpublished).

In several of the cases relied upon by Plaintiff, the defendant made predictions in a prospectus or registration statement that were not borne out by subsequent events. *E.g., Robbins,* 788 F.Supp. at 182, 192 (statements "misleading in both their affirmative optimism and in the omission of known problems . . . "); *Laker,* 854 F.Supp. at 931 (defendant knew of company's problems before it made positive predictions).

In others, a defendant's subsequent filings with the SEC revealed the negative consequences of actions taken by the defendant before the prospectus or registration statement was issued, actions specifically identi-

fied in the complaint. *See Nicholas v. Poughkeepsie Sav. Bank FSB*, Fed.Sec. L.Rep. (CCH) ¶ 95,606, 1990 WL 145154 (S.D.N.Y.1990) (bank officers altered loan/loss reserves before prospectus issued) (unpublished); *Diamond v. Fogelman*, cv 90–0900 at 35–37 (E.D.N.Y.1991) (unpublished) (defendant did not disclose that he was guarantor on prior real estate projects, which had diminished his ability to satisfy personal guaranty described in registration statement and prospectus).

In contrast, HDI's Prospectus/Registration Statement did not make any predictions regarding the future performance of BPC or Aegis. Furthermore, the Prospectus/Registration Statement did not characterize the risk involved in these investments. The Prospectus/Registration Statement merely set forth the fact of BPC and Aegis' past revenues. Without being connected to some prediction or evaluation of the risk associated with these investments, the statements reporting BPC and Aegis' purely historical revenue performance were not rendered misleading by subsequent events.

Federal securities law does not require disclosure of facts that are purely hypothetical or not reasonably discoverable by the defendant. *See General Electric Co. by Levit v. Cathcart*, 980 F.2d 927, 935 (3d Cir. 1992); *In re Keegan Management*, 794 F.Supp. at 946. A defendant is not obligated to predict future events, absent some reason to believe that they will occur. *In re Ultimate Corp. Securities Litigation*, Fed.Sec. L.Rep. ¶ 94,522, 1989 WL 86961 (S.D.N.Y. 1989) (unpublished).

Since Plaintiff has failed to allege any fact that shows that BPC and Aegis were in "precarious" financial condition when the Prospectus and Registration Statement became effective at the end of March, 1994, she has failed to state a claim that the statements related to these companies' past revenue were materially false or misleading in violation of sections 11(a) and 12(2). Plaintiff's allegations are based entirely upon hindsight: the problems with these two companies that were revealed in HDI's 10–Q report dated August 15, 1994. *See In re Bank of Boston Securities Litigation*, 762 F.Supp. at 1538.

To the extent that Plaintiff's claims rest upon alleged misrepresentations related to HDI's investments in BPC and Aegis, they are **dismissed.**

### 3. HDI's Proprietary Customer Lists

According to Plaintiff, HDI's Prospectus/Registration Statement contained materially false and misleading statements related to HDI's proprietary customer lists. Initially Plaintiff alleged in her Complaint that statements characterizing HDI's proprietary customer lists as containing a high percentage of "tested" customers, who had previously purchased from a catalogue owned by HDI, were false and misleading. Compl. ¶¶ 52, 59. In addition, Plaintiff alleged that the Prospectus and Registration Statement omitted the material fact that HDI's proprietary mailing list "was inadequate to support the Company's stated growth plans" and that HDI would need to resort to "blind mailings." Compl. ¶ 60.

In support of this motion to dismiss, Defendants cite numerous passages from the Prospectus and Registration Statement that contradict Plaintiff's allegations. Def.Br. at 25–28. The statements cited by Defendants suggest that a reasonable investor would have interpreted the Prospectus and Registration Statement as indicating that HDI planned to solicit new customers not on any prior mailing lists. In addition, Defendants demonstrated that, contrary to Plaintiff's suggestion, the Prospectus and Registration Statement did not make any predictions regarding future response rates to HDI mailings or their impact on the company's growth.

In the opposition brief, Plaintiff has not reasserted its claims based upon these alleged misrepresentations or made any arguments based upon these facts. Instead, Plaintiff's opposition rests solely upon Defendants' alleged failure to disclose that during the first quarter of 1994, which ended three days before the Prospectus and Registration Statement became effective, HDI's substantial increase in new mailings yielded lower revenues and response rates in comparison to a similar period during 1993. Compl. ¶ 61. HDI disclosed this downturn in its second

quarter 10–Q report, dated August 15, 1994. Since Plaintiff has implicitly abandoned her other allegations related to the proprietary mailing lists as supportive of her claims, this single allegation is before the Court.

For the same reasons that Plaintiff's allegation that the Prospectus and Registration Statement failed to disclose a material adverse trend in returns could not support her claims, this allegation of lower response rates to catalogue mailings during the first quarter of 1994 is also deficient. Defendants did not have a duty to disclose data from an ongoing fiscal quarter. *See Renz*, 832 F.Supp. at 781; *In re Keegan Management*, 794 F.Supp. at 946; *Worlds of Wonder*, 35 F.3d at 1418–19. Even if Defendants had such an obligation, Plaintiff has not demonstrated that any compiled information in fact existed that could have been disclosed. *In re Keegan Management*, 794 F.Supp. at 946. Moreover, the Prospectus and Registration Statement did not make any predictions regarding response rates for the first quarter of 1994 that did not materialize. In fact, the statements that were contained in the Prospectus and Registration Statement indicated that HDI "had experienced lower response rates related principally to an aggressive customer acquisition campaign" in 1993. Lang Decl.Exh. 2 at 17.

Where a prospectus "does in fact describe the marketing strategy which the [Company] planned to utilize ... [i]n conjunction with statements concerning the intensity of ... competition [within the industry] ... these disclosures sufficed to inform the reasonable investor that the [Company] would need to expend substantial sums in its efforts to attract patrons ..." *Trump Casino*, 7 F.3d at 376 n. 21.

Applying these standards, the Prospectus and Registration Statement provided sufficient information to apprise the reasonable investor of the obvious risk that HDI's solicitation of new customers might result in lower response rates. The Prospectus and Registration Statement also indicated that HDI had acquired three previously underperforming new catalogues, as well as the rights to use the mailing list containing 23 million names from the discontinued Sears catalogue. Furthermore, the Prospectus and Registration Statement warned that the mail-order catalogue industry was "highly competitive." Lang Decl.Exh. 2 at 8. In light of these detailed disclosures, a statement that there was a risk that HDI would experience a lower response rate was unnecessary. *See Trump Casino*, 7 F.3d at 374–75.

Under these circumstances, the Court concludes that the statements contained in the Prospectus and Registration Statement regarding the response rate to HDI's catalogue mailings were not false or misleading when made. To the extent that Plaintiff's claims rely upon allegedly false or misleading information related to response rates, they are **dismissed.**

### *4. Claims Against Defendant Quasha*

In Count III of the Complaint, Plaintiff asserts a claim against Defendant Quasha as a "controlling person" responsible for violations of sections 11 and 12 by his subordinates. *See* 15 U.S.C. § 77o. Since this Court has found that no violations of section 11 or 12 occurred, there is no basis for controlling person liability. Consequently, Count III of Plaintiff's Complaint is **dismissed.**

### *5. Plaintiff's Request to Amend the Complaint*

In a footnote, Plaintiff requests the Court to grant her leave to file an amended complaint in the event that any portion of the Complaint is found deficient.

Plaintiff's request for leave to amend is **denied** for three reasons. First, the request is not properly before the Court by way of a notice of motion. Second, Plaintiff has not submitted a copy of the proposed amended complaint in accordance with Local Rule 12H. Third, the Court finds that such an amendment would be futile and is therefore unwarranted. *See e.g., Trump Casino*, 793 F.Supp. at 568.

### III. *CONCLUSION*

Defendants' motion to dismiss is **granted.**