**Maryvonne HEMMING, Plaintiff,**

v.

**ALFIN FRAGRANCES, INC., Irwin Alfin, Betsy Alfin, Sam Reich, Bernard Stern, J.D. Saunders, Steven A. Greenberg and Dr. Christian Barnard, Defendants.**

**No. 86 Civ. 2563 (JFK).**

United States District Court, S.D. New York.

July 11, 1988.

---

Stanley L. Kaufman, Kaufman Malchman Kaufmann & Kirby, New York City, for plaintiff.

Peggy L. Kerr, Skadden, Arps, Slate, Meagher & Flom, New York City, for the Alfin defendants.

Richard F. Horowitz, Heller, Horowitz & Feit, P.C., New York City, for defendant Greenberg.

## OPINION and ORDER

KEENAN, District Judge:

### Background

The present securities fraud class action arises out of the marketing of Glycel, a skin care product. This lawsuit has been the subject of an earlier Opinion and Order of this Court, dated February 9, 1987. In that decision, the Court granted the defendants' motion to dismiss the complaint pur-

suant to F.R.C.P. 9(b). Plaintiff, however, was granted leave to replead and subsequently filed an Amended and Supplemental Complaint ("Amended Complaint"), that named the original defendants ("Alfin Defendants") and added a new defendant, Steven A. Greenberg.[*] The Alfin Defendants and Greenberg have moved to dismiss the Amended Complaint under F.R.C.P. 9(b) and F.R.C.P. 12(b)(6). For the reasons set forth below, the defendants' motions are granted in part and denied in part.

## Facts

Although the circumstances of this dispute were set forth in the Court's earlier decision, the Amended Complaint and the Kaufman Affidavit[1] contain some additional information. For the sake of clarity, the Court will set forth plaintiff's allegations.

Alfin Fragrances ("the company") is a New York corporation that has been in the fragrance and skin care business. Defendants Irwin Alfin, Betsy Alfin and Sam Reich are directors and officers of the company. Defendants J.D. Saunders and Bernard Stein are directors of the company. Dr. Christian Barnard, who performed the world's first heart transplant, purportedly helped to develop aspects of Glycel and helped to promote the product. Steven A. Greenberg is a public relations man who has promoted the company and other publicly held corporations. Plaintiff brings this lawsuit on behalf of herself and all others who purchased the company's stock from November 1, 1985 until December 8, 1986. The essence of plaintiff's claim is that, beginning in November, 1985, the defendants conceived and performed a plan to inflate the price of the company's stock through bogus assertions concerning Glycel.

According to the Amended Complaint, the defendants "knew that GLYCEL was merely a promotional idea with no special medical or scientific merit, conceived by a Swiss spa owner." Amended Complaint ¶ 24. As part of their plan, the defendants issued a press release on December 9, 1985 stating that "Alfin was selling 'a patented ingredient and a patented transdermal carrier system developed by Dr. Christian Barnard, world renowned by his medical pioneering work in the fields of heart transplant, tissue regeneration and anti-aging.'" Id. ¶ 28. Greenberg allegedly told the press in January, 1986 that Glycel "'brings back the memory of the cell.'" Id. ¶ 30. Barnard allegedly had told a group of investment analysts this same thing during a luncheon in New York City on December 12, 1985. Id. ¶ 31. According to the plaintiff, these statements caused various brokerage houses to report favorably about the company's future. On February 24, 1986, the defendants issued a press release announcing that Irwin Alfin and Barnard would embark on a one month tour during which they would visit several cities and discuss Glycel with retailers, the media and members of the financial community. Id. ¶ 37. The complaint sets forth the entire press release which states, in part, that Glycel contains "'glycosphingolipids ("GSL"), an ingredient isolated for used [sic] in GLYCEL by Dr. Christian Barnard, world renowned for his work in heart transplant surgery.'" Id.

Plaintiff contends that additional misrepresentations were made in an advertisement in the March 2, 1986 edition of the New York Times Magazine. In brief, the advertisement asserted that Barnard and a team of cell biologists had discovered that Glycel accelerates cell renewal and that Barnard had isolated GSL. Id. ¶¶ 43, 44. Moreover, the defendants allegedly published a brochure and pamphlet in approximately January, 1986 making similar

---

[*] Two additional lawsuits concerning the same events are also before this Court: *Ryback v. Alfin Fragrances, et al.,* 87 Civ. 4353 (JFK) [available on WESTLAW, 1988 WL 75270] and *Antweil v. Alfin Fragrances, et al.,* 88 Civ. 0525 (JFK) [available on WESTLAW, 1988 WL 75275]. Motions to dismiss these complaints have been filed and have been decided today.

1. At a pretrial conference on April 30, 1987, plaintiff sought to amend the complaint again. The court denied plaintiff's request, but directed plaintiff to incorporate any additional relevant events in an affidavit in opposition to the defendants' motion to dismiss. The additional contentions are contained in the Affidavit of Stanley L. Kaufman.

claims. *Id.* ¶¶ 47, 48. It is pleaded that Irwin Alfin and Greenberg told the press that Glycel could be marketed without being subjected to clinical tests, as required for drugs, by the Federal Food and Drug Administration ("FDA"). *Id.* ¶ 49. Plaintiff alleges that on March 27, 1986, with Greenberg's assistance, Irwin Alfin announced on the Dow Jones broad tape that the FDA and the Federal Trade Commission ("FTC") were seeking information about Glycel due to the wide interest in the product. *Id.* ¶ 50. Furthermore, for a time, defendants used a video-screen display at department store counters featuring a tape of Barnard, dressed in a doctor's gown, discussing Glycel's scientific and anti-aging values. *Id.* ¶ 51. It is contended that as the defendants' scheme became apparent, the company's stock dropped from approximately $40 per share to $4 per share. The Kaufman Affidavit states that since the amended complaint's filing, the FDA sent the company a regulatory letter which demanded that the company seek new drug status for the Glycel line due to the manner in which the products were portrayed. Kaufman Aff. ¶¶ 6–7.

The amended complaint avers that each individual defendant is liable as a direct participant and as an aider and abettor. Moreover, defendants Irwin Alfin, Betsy Alfin and Sam Reich are alleged to be controlling persons of the company.

## DISCUSSION

The original complaint filed in this case was lacking in three areas. It failed to specify the times, places and sources of the claimed misrepresentations, it failed to allege facts that support an inference of fraud and it failed to distinguish among the defendants. Federal securities fraud complaints must identify with particularity the statement or statements alleged to be deceptive, the person who made the statement, and the time and place the statement was made. *See Goldman v. Belden,* 754 F.2d 1059, 1069–70 (2d Cir.1985); *Denny v.*

*Barber,* 576 F.2d 465, 469 (2d Cir.1978); *Greenfield v. Professional Care, Inc.,* 677 F.Supp. 110, 114 (E.D.N.Y.1987). Vague allegations of deceptive statements hardly give a defendant fair notice of his purportedly fraudulent conduct. By requiring greater specificity in fraud cases, F.R.C.P. 9(b) strikes a balance between the concept of notice pleading embodied in F.R.C.P. 8(a) and society's interest in protecting a person's reputation from groundless fraud claims.

Although still wanting in some respects, in large part the Amended Complaint passes muster under F.R.C.P. 9(b). There are basically two areas which the complaint alleges are circumstances constituting fraud: statements concerning the Glycel product line and statements concerning the company's financial situation and outlook. Each is considered in turn.

The bulk of the alleged misstatements involve the effect Glycel has on aging skin. Most of these contentions comply with 9(b). Paragraph 28 specifies the date, place and content of an allegedly misleading press release. While this paragraph does not specify among the defendants, all of the defendants are on notice that plaintiff bears the burden of proving primary liability or "controlling persons" liability for this claim.[2] Paragraph 31 specifies a date and a place for a specific statement made by defendant Barnard. This statement may also yield controlling person liability for defendants Irwin Alfin, Betsy Alfin and Sam Reich. Paragraph 37 identifies Greenberg as the author of a press release dated February 24, 1986. The only statement in the press release that in any way allows an inference of scienter concerns Barnard's having isolated GSL. To this extent, paragraph 37 satisfies 9(b). It must be stressed, however, that paragraph 37 does not concern any statements made by Irwin Alfin and Barnard during their promotional tour. Paragraph 37 may not serve as a springboard for proof concerning what took place during the tour. Paragraphs 43

**2.** As will be set forth below, the complaint fails to allege aiding and abetting liability and re-

pleading will not be permitted in this regard.

and 44 allege specific statements contained in a magazine advertisement. Because plaintiff does not distinguish among defendants in these two paragraphs, and because aiding and abetting liability has not been properly pleaded, plaintiff would have to prove primary liability as to all defendants, or controlling person liability as to some defendants. The analysis for paragraphs 43 and 44 holds true for paragraphs 46 through 48, which describe statements in a brochure and pamphlet produced by the defendants. Paragraph 50, directed towards Irwin Alfin and Greenberg, sets forth a particular statement made on a specific date on the Dow Jones broad tape and, therefore, complies with 9(b).

There are three paragraphs concerning claims about Glycel that run afoul of 9(b). Paragraph 30 states that in January, 1986, Greenberg told the press that Glycel "brings back the memory of the cell." This allegation is insufficient because it does not specify where, or to whom, Greenberg made this statement. Paragraph 49 describes statements made by Irwin Alfin and Greenberg regarding the company's ability to market Glycel without first conducting clinical tests. This allegation is similarly insufficient because it fails to specify where, when and to whom these statements were made. Paragraphs 51 and 52 address the use of a video tape at department store cosmetic counters featuring Barnard. These contentions fail under 9(b) because they provide no time frame and no specification as to where the film was displayed.

The second area of misrepresentation involve statements about the company's financial status. None of these allegations comply with 9(b). Paragraph 18 asserts that the defendants "made and circulated materially false representations and omissions concerning GLYCEL and the financial condition and prospects of Alfin." Paragraph 60 claims that the defendants failed to disclose data concerning sales and projections. Each of these allegations fall far short of the pleading requirements in a securities fraud case. Paragraph 18 fails to indicate any specific statement, time frame, location or speaker. Paragraph 60 is deficient because it fails to identify any specific financial statement that was made misleading by the defendants failure to disclose other information. Paragraphs 32 through 36, and paragraph 42, concern statements and forecasts made by members of the financial community who are not named as defendants. The complaint does not allege that these financial players were owned by the defendants, or agents of the defendants. Thus, the statements may not serve as the basis for relief against the defendants. In addition, these paragraphs do not specify any statements made by the defendants. Therefore, the statements do not comply with either F.R.C.P. 12(b)(6) or 9(b) as to the defendants. While the paragraphs are more specific concerning what was said by entities such as Morgan Stanley & Company, they fail to allege securities fraud by the defendants.[3]

Rule 9(b) also provides that intent may be averred generally. The complaint, however, must contain a sufficient factual

---

**3.** It should also be noted that to prevail in a section 10(b) case, plaintiff must prove that the defendant's misrepresentations caused the injury suffered. This requires a showing of both transaction causation and loss causation. Transaction causation involves proof that the defendants' misrepresentations and omissions caused the purchase of securities. Loss causation involves a showing that the misrepresentations and omissions proximately caused the economic harm. See *Wilson v. Ruffa & Hanover,* 844 F.2d 81, 85–86 (2d Cir.1988); *Bennett v. United States Trust Co.,* 770 F.2d 308, 313 (2d Cir.1985), *cert. denied,* 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986) (quoting *Schlick v. Penn-Dixie Cement Corp.,* 507 F.2d 374, 380 (2d Cir.1974), *cert. denied,* 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975)). If the proof in this case shows that the statements made by the defendants were not materially misleading, plaintiff would face difficulties in establishing loss causation. Assuming that the defendants' statements concerning Glycel were true, plaintiff would not satisfy the loss causation requirement by establishing that the negative publicity that eventually surrounded the product resulted in the stock's decline. Under that scenario, the economic loss suffered by plaintiff would be attributable to inaccurate press coverage, inaccurate criticisms of Glycel and Barnard, and the investing public's reaction to these inaccuracies, and not to the defendants' statements.

basis to support an inference of scienter. *See Goldman v. Belden,* 754 F.2d 1059, 1070 (2d Cir.1985). These requirements are satisfied by the Amended Complaint.

In evaluating the original complaint in this case, the Court noted that fraudulent intent could not be inferred from investigative reports by the media, or from a federal agency's informational inquiry into Glycel. At the present time, however, more has transpired than these events. At the conference before the Court on April 30, 1987, plaintiff's request to amend the complaint further was denied. The Court directed plaintiff to include in an affidavit in opposition to the defendants' motions to dismiss those events which would have been pleaded. This affidavit will be considered on the present motion due to the Court's earlier instruction. The Kaufman Affidavit alleges that on April 17, 1987, the FDA sent the company a Regulatory Letter stating that the agency viewed Glycel's labelling as including drug claims. The FDA stated that it regarded the Glycel product line to be in serious violation of the Federal Food, Drug, and Cosmetics Act. Kaufman Aff., ¶¶ 6–8; *id.* Ex.A. When joined with the Amended Complaint's allegations that the defendants knew their claims about Glycel were either overly boastful, or complete fabrications, and the alleged financial stake that the defendants allegedly had in the company, rule 9(b)'s state of mind requirement is satisfied. The Court observes in passing that scienter is not being inferred from the company's use of an accounting method that is entirely proper and widely used in the industry.

Plaintiff is hereby granted leave to amend the complaint to include the FDA Regulatory Letter and the company's financial situation.

■ The defendants seek to dismiss the Amended Complaint under F.R.C.P. 12(b)(6) on the ground that it fails to allege any fraud "in connection with" the purchase or sale of a security as required by section 10(b). Defendants contend that the plead-

ing sounds more in false advertising than in securities fraud. Plaintiff responds that the defendants were directing their statements to investors in order to promote sales of stock.

The touchstone for "in connection with" issues is Judge Friendly's opinion in *Chemical Bank v. Arthur Andersen & Co.,* 726 F.2d 930 (2d Cir.), *cert. denied,* 469 U.S. 884, 105 S.Ct. 253, 83 L.Ed.2d 190 (1984). The Second Circuit stated that,

> [t]he purpose of § 10(b) and Rule 10(b)(5) is to protect persons who are deceived in securities transactions—to make sure that buyers of securities get what they think they are getting and that sellers of securities are not tricked into parting with something for a price known to the buyer to be inadequate or for a consideration known to the buyer not to be what it purports to be.

*Chemical Bank,* 726 F.2d at 943. When viewed in this light, certain alleged misrepresentations clearly do not invoke the anti-fraud provisions of the federal securities laws.

Paragraphs 43 and 44, while satisfying rule 9(b)'s particularity strictures do not satisfy the "in connection with" requirement. These paragraphs concern an advertisement in the New York Times Magazine. The advertisement described in the Amended Complaint concerns Glycel's qualities as a skin care treatment, not as an investment choice. This was not an advertisement that set forth a corporate earnings report geared to investors. The statements contained in the advertisement have absolutely no connection with a securities transaction and do not serve as a basis upon which relief may be granted.

Paragraphs 47 and 48 deal with a brochure and pamphlet that also lack any connection with a securities purchase or sale.[4] Although an investor might read these promotional materials, the brochure and pamphlet are geared to consumers of a product, not investors in a corporation. It would distort the meaning of rule 10(b)(5)

---

**4.** Even had paragraphs 51 and 52 satisfied F.R. C.P. 9(b), they would be dismissed for failure to state a claim. The promotional efforts in a

department store are hardly "in connection with" the purchase or sale of a security.

to allow such materials to serve as a basis for liability. Similarly, no statements made on the packaging of Glycel could satisfy the "in connection with" requirement. Even if promotional materials accurately described Glycel as a product, the product's maker might not be a wise investment choice. Poor management, misdirected product marketing or excessive debt could all make a company a questionable investment, even if its main product line was a panacea against the all too familiar aging process.

While the substance of the statements alleged in paragraphs 28, 31 and 37 are similar to those in the paragraphs described above, these statements are directed towards the financial community. The context of these statements places them in a different light. Because of the audience, the goal of these statements could be seen as the sale of stock by stressing the potential of a new product. In this environment, concerns about a company's management and financial operations are likely to be considered, unlike the context of a pure product pitch to consumers. Paragraph 50 also satisfies the "in connection with" requirement at the pleading stage. This paragraph concerns a statement made by Irwin Alfin in the financial community bearing upon government regulation of a company's product.

█ Defendants also move to dismiss the complaint to the extent it purportedly pleads aiding and abetting a violation of the federal securities laws. It is well settled in this circuit that to plead aiding and abetting liability, plaintiff must allege:

(1) the existence of a securities law violation by the primary (as opposed to the aiding and abetting) party;

(2) "knowledge" of this violation on the part of the aider and abettor; and

(3) "substantial assistance" by the aider and abettor in the achievement of the primary violation.

*ITT v. Cornfeld*, 619 F.2d 909, 922 (2d Cir.1980). Plaintiff, despite the filing of two complaints, has failed to allege aiding and abetting. Paragraph 63 states in conclusory fashion that each defendant is lia-

ble as a direct participant and as an aider and abettor. Reading the complaint liberally, one cannot determine when a defendant engaged in primary liability as compared to aiding and abetting liability. Plaintiff cannot merely charge defendants with various forms of securities fraud liability in the hope that at trial something will stick. The aiding and abetting allegation is dismissed for failure to state a claim.

█ Defendants Irwin Alfin, Betsy Alfin and Sam Reich move to dismiss the claim that they are liable as "controlling persons" pursuant to § 20 of the Securities Exchange Act of 1934. The Second Circuit has noted that this section was intended to impose liability on controlling persons "who are in some meaningful sense culpable participants in the fraud perpetrated by controlled persons." *Lanza v. Drexel & Co.*, 479 F.2d 1277, 1279 (2d Cir.1973) (en banc). Paragraph 28 of the Amended Complaint adequately sets forth the basis for such liability in that it states the defendants issued a misleading press release. Reading this allegation in the light most favorable to the plaintiff, one can image a scenario in which the "controlling persons" encouraged and permitted the issuance of a press release that they knew was false. The Court stresses, however, that plaintiff will have to demonstrate meaningful culpable conduct to recover under a "controlling persons" theory. *See Harrison v. Enventure Capital Group, Inc.*, 666 F.Supp. 473, 478 (W.D.N.Y.1987). A person's status as an officer, director or shareholder, absent more, is not enough to trigger liability under § 20.

## CONCLUSION

Defendants motion to dismiss pursuant to F.R.C.P. 9(b) and 12(b)(6) is hereby granted to the extent set forth above. Plaintiff is granted leave to file a Second Amended and Supplemental Complaint within twenty days of the date this Opinion and Order is entered on the Court's docket. Plaintiff is directed to remove those portions of the complaint that are stricken by this Opinion and Order. Plaintiff may only

add to the Complaint the information in the Kaufman Affidavit described earlier. The parties are directed to proceed with discovery and appear for a pretrial conference on November 28, 1988 at 9:45 a.m. in Courtroom 444.

SO ORDERED.