Marvin RUBINSTEIN, Sari Rubinstein, Jay Rubinstein, Chie Rubinstein, and Jonathan Rubinstein, Plaintiffs,

v.

SKYTELLER, INC., Richard Postrel, and Jennifer Postrel, Defendants.

No. 98 Civ. 4620(SAS).

United States District Court, S.D. New York.

March 2, 1999.

David Dunn, Louis A. Craco, Davis Weber & Edwards, P.C., New York City, for Plaintiffs.

Alan Mansfield, Robert J. Kirshenberg, Greenberg Traurig, P.A., New York City, for Defendants.

## OPINION & ORDER

SCHEINDLIN, District Judge.

Plaintiffs have brought suit alleging violations of Section 10(b) of the Securities Exchange Act of 1934 ("1934 Act"), 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5, common law fraud, and breach of fiduciary duty. Defendants have moved to dismiss on the following grounds: (1) that the complaint fails to plead scienter adequately; (2) that the complaint fails to comply with the pleading requirements of Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"); and (3) that the plaintiffs improperly pled a derivative claim. Defendants also move for a transfer of venue to the Southern District of Florida pursuant to 28 U.S.C. § 1404(a). For the following reasons, defendants' motion to dismiss is granted in part and denied in part. Defendants' motion to transfer venue is granted.

## I. Facts

The following allegations are taken from the Amended Complaint ("Am.Cmpl.") unless otherwise indicated. Defendant Skyteller, Inc. ("Skyteller") is a corporation incorporated under the laws of Delaware with its principal place of business in Florida. Am. Cmpl., ¶ 6. Defendant Richard Postrel is the President and Chief Executive Officer of Skyteller. Id., ¶ 7. Richard Postrel, with his wife Jennifer Postrel, own a majority of the common stock of Skyteller. Id. Jennifer Postrel is alleged to be a de jure or de facto officer of Skyteller. Id., ¶ 8. Plaintiff Marvin Rubinstein was a long time friend of Richard Postrel and the purchaser of some 30 shares of Skyteller common stock. Id., ¶ 16. The remaining plaintiffs are all relatives of Marvin Rubinstein to whom he transferred a portion of the Skyteller stock. Id., ¶¶ 2–5.

Skyteller issued 1,000 shares of common stock in July of 1995. Id., ¶ 15. On a number of occasions prior to July 11, 1995, Richard Postrel represented to Marvin Rubinstein that he would purchase 510 shares (51%) of the shares issued and would cause Skyteller to reserve 300 shares (30%) for subsequent purchase by an institutional investor to provide additional needed capital. Id., ¶ 17. According to plaintiff, this representation was false as Richard Postrel had no intention of causing Skyteller to reserve 300 shares for such purchase. Id., ¶ 18. Instead, he intended to appropriate to himself and his wife the 300 reserved shares without paying for them. Id.

Relying on this misrepresentation, Marvin Rubinstein purchased five shares of Skyteller stock on July 3, 1995 for $100,000. Id., ¶ 19. Through means of communication in interstate commerce, Richard Postrel repeated this misrepresentation to Marvin Rubinstein between July 3 and September 1, 1995. Id., ¶ 20. Reasonably relying on these additional misrepresentations, Marvin Rubinstein purchased an additional five shares of Skyteller stock for $100,000. Id. Then, on October 26, 1995, Skyteller issued to Marvin Rubinstein an option to purchase ten additional shares for $200,000. Id., ¶ 21. Between September 1 and December 21, 1995, Richard Postrel repeated the foregoing misrepresentation causing Marvin Rubinstein to exercise his option and purchase an additional ten shares. On several occasions between December 21, 1995 and August 1, 1996, Richard Postrel again repeated the misrepresentation that he would cause Skyteller to reserve 300 shares for purchase by an institutional investor. Id., ¶ 23. Again, Marvin Rubinstein relied on this misrepresentation and purchased an additional ten shares on August 1, 1996. Id.

The alleged misappropriation of these 300 shares took place in June of 1997 when Richard and Jennifer Postrel caused Skyteller to enter into a partnership with First Data Corporation ("First Data"). Id., ¶ 28. Somehow in connection with the

establishment of this partnership, the Postrels misappropriated the 300 shares previously reserved for financing without paying for them. *Id.* As a result, the value of the stock purchased by Marvin Rubinstein is less than it would have been in the absence of the misappropriation. *Id.,* ¶ 33. Furthermore, the amount of distributions the Rubinsteins received from the First Data transaction were correspondingly smaller than they would have been had the Postrels kept the 300 shares in reserve. *Id.*

Direct allegations against Jennifer Postrel are sparse indeed. As stated earlier, it is alleged that Jennifer Postrel serves as Skyteller's *de jure or de facto* Treasurer and/or Chief Financial Officer. *Id.,* ¶ 8. In this capacity, she has the authority to write checks from Skyteller's corporate accounts several of which she has sent to the Rubinsteins at their home in New York. *Id.* In addition, it was Jennifer Postrel who transmitted the letter to Marvin Rubinstein's home in New York granting him the option to purchase ten additional shares. *Id.,* ¶ 21. Jennifer Postrel, along with Richard Postrel, also caused Skyteller to send a "Confidential Information Memorandum" to Marvin Rubinstein which listed "300 Common shares reserved for financing." *Id.,* ¶ 24. This memorandum was sent on September 11, 1996, after Marvin Rubinstein made his last purchase of Skyteller shares. Jennifer Postrel also sent Marvin Rubinstein the distribution checks from the First Data transaction. *Id.,* ¶ 29. Finally, in the months following September 1887, Marvin Rubinstein spoke on the phone with Jennifer Postrel who failed to inform him of the stock misappropriation. *Id.,* ¶ 31.

## II. Discussion

### A. Motion to Dismiss Standard

Rule 12(b)(6) imposes a substantial burden upon the moving party. *Cruz v. Jackson,* 94 Civ. 2600, 1997 WL 45348, at *3 (S.D.N.Y. Feb.5, 1997). A court may only grant a motion to dismiss if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A court must accept the factual allegations alleged in the complaint as true and all inferences must be drawn in plaintiff's favor. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Cohen v. Koenig,* 25 F.3d 1168, 1171–72 (2d Cir.1994).

### B. Claims Against Richard Postrel

Section 10(b) prohibits the use of any manipulative or deceptive device or contrivance in connection with the purchase or sale of securities. Rule 10b–5 more specifically describes what constitutes a manipulative or deceptive device or contrivance. *See* 17 C.F.R. § 240.10b–5. In order to state a claim under Rule 10b–5, a plaintiff must allege that

> in connection with the purchase or sale of securities, the defendant, acting with scienter, made a false material representation or omitted to disclose material information and that plaintiff's reliance on defendant's action caused [plaintiff] injury.

*Press v. Chemical Inv. Servs. Corp.,* 166 F.3d 529 (2d Cir.1999) (quoting *In re Time Warner Inc. Secs. Litig.,* 9 F.3d 259, 264 (2d Cir.1993) (internal quotations omitted)). In addition, "[a]llegations of securities fraud under § 10(b) and Rule 10b–5 are subject to Rule 9(b)'s requirements regarding scienter." *In re Credit Suisse First Boston Corp. Securities Litig.,* 97 Civ. 4760, 1998 WL 734365 (S.D.N.Y. Oct.20, 1998).

Prior to the passage of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), the Second Circuit held that a Section 10(b) claim had to satisfy two distinct but related pleading requirements under Rule 9(b). *Mishkin v. Ageloff,* 97 Civ. 2690, 1998 WL 651065, at *20 (S.D.N.Y. Sept.23, 1998). First, Rule 9(b) requires the facts and circumstances con-

stituting the fraud to be alleged with particularity. Fed.R.Civ.P. 9(b). Accordingly, the Court of Appeals required plaintiffs to: " '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.' " *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1127–28 (2d Cir.1994) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir.1993) (citation omitted)); *see also Primavera Familienstiftung v. Askin*, 173 F.R.D. 115, 123 (S.D.N.Y.1997). This standard was codified in the PSLRA. *Mishkin*, 1998 WL 651065, at *20. Second, to give meaning to Rule 9(b)'s overall purpose, the Court of Appeals required plaintiffs "to allege facts that give rise to a strong inference of fraudulent intent." *Shields*, 25 F.3d at 1128; *see also Chill v. General Elec. Co.*, 101 F.3d 263, 267 (2d Cir.1996). A "strong inference" could be shown either "(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields*, 25 F.3d at 1128; *see also Chill*, 101 F.3d at 267. This strong inference standard was adopted by the PSLRA which now requires complaints in federal securities fraud actions to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2); *see also Mishkin*, 1998 WL 651065, at *21.

■ Prior to the Second Circuit's opinion in *Press*, there was much disagreement among courts within this Circuit as to whether averments of "motive and oppor-

tunity" remained sufficient to plead scienter or whether the PSLRA imposed a higher standard which could only be satisfied with allegations of facts constituting strong circumstantial evidence of conscious misbehavior or recklessness.[1] *See The High View Fund, L.P. v. Hall*, 27 F.Supp.2d 420, 426 n. 2 (S.D.N.Y.1998). That issue has apparently been resolved by the Second Circuit. In *Press*, the court held that the PSLRA heightened the requirement for pleading scienter to the level used by the Second Circuit. 166 F.3d 529, 537–38. Accordingly, as a pleading requirement, a plaintiff must either allege facts showing motive and opportunity or allege facts showing conscious misbehavior or recklessness. *Id.* Notably, the court stated that it has been lenient in allowing scienter issues to go to the jury as such issues are generally questions of fact. *Id.*, at 538.

■ Applying these principles, I find that the amended complaint satisfies the who, what, when and where requirements of Rule 9(b). First, it clearly states what statements were made (*i.e.*, that 300 shares of Skyteller stock was to be reserved for purchase by an institutional investor). Second, precise time frames are provided with respect to when these statements were made by Richard Postrel (prior to July 11, 1995, between July 3 and September 1, 1995, between September 1 and December 21, 1995, and between December 21, 1995 and August 1, 1996). Third, the manner in which these misrepresentations misled the plaintiff is apparent since the infusion of additional capital would likely raise the market value of outstanding shares. Finally, the amended

---

1. *Compare Varljen v. H.J. Meyers, Inc.*, 97 Civ. 6742, 1998 WL 395266, at *3–4, n. 6, (S.D.N.Y. July 14, 1998); *Press v. Quick & Reilly*, 96 Civ. 4278, 1997 WL 458666, at *2 n. 2 (S.D.N.Y. Aug.11, 1997); *In re Health Management, Inc. Sec. Litig.*, 970 F.Supp. 192, 201 (E.D.N.Y.1997); *Primavera Familienstiftung*, 173 F.R.D. at 123; *Sloane Overseas Fund, Ltd. v. Sapiens Int'l Corp.*, 941 F.Supp. 1369, 1377 (S.D.N.Y.1996), *with In re Health Management Sys. Inc. Securities Litig.*, 97 Civ. 1865, 1998 WL 283286, at *6 (S.D.N.Y. June 1, 1998); *Novak v. Kasaks*, 997 F.Supp. 425, 430 (S.D.N.Y.1998); *In re Baesa Securities Litig.*, 969 F.Supp. 238, 242 (S.D.N.Y.1997); *Norwood Venture Corp. v. Converse Inc.*, 959 F.Supp. 205, 208 (S.D.N.Y.1997).

complaint is clear as to what the defendants got as a result of the fraud (use of the money initially invested by Marvin Rubinstein as well as a substantial increase in their ownership percentage of Skyteller). Accordingly, the requirements of Rule 9(b) have been satisfied. *See Mills*, 12 F.3d at 1175.

■ That leaves the issue of scienter. With regard to motive and opportunity,[2] courts have held that general allegations of financial interest are insufficient to prove scienter. *Sloane*, 941 F.Supp. at 1377; *see also Primavera*, 173 F.R.D. at 123 ("Although the desire to enhance income may motivate a person to commit fraud, allegations that a defendant stands to gain economically from fraud do not satisfy the heightened pleading requirements of Rule 9(b)."). In the instant case, however, Richard Postrel did more than gain economically as a result of his fraud, he also increased his ownership percentage and control in Skyteller. His motivation, therefore, was not purely financial. Regarding opportunity, Richard Postrel was in the best position to realize the fruits of his misrepresentations. Not only is he Skyteller's Chief Executive Officer but he orchestrated the First Data transaction to his benefit. Accordingly, I find that plaintiff has adequately alleged scienter under the motive and opportunity test.

■ I also find that plaintiff adequately alleged conscious misbehavior on the part of Richard Postrel. The failure to carry out a promise can constitute fraud when, at the time the promise was made, the defendant secretly intended not to perform it. *Mills*, 12 F.3d at 1175 ("A person who promises to perform a specific act in the future, while secretly intending not to perform, violates Rule 10b–5"); *see also Finkel v. Stratton Corp.*, 754 F.Supp. 318, 329 (S.D.N.Y.1990), *aff'd in part, rev'd in part*,

962 F.2d 169 (2d Cir.1992) ("Allegations supporting an inference of fraudulent intent frequently include defendant's statement that a fact exists or an event will come to pass coupled with allegations that the fact did not exist or the event did not occur, and circumstances indicating that the statement was false when made."); *Pross v. Katz*, 784 F.2d 455, 457 (2d Cir. 1986).

■ Perhaps the case most on point is *Norwood Venture*. There, defendants purchased the stock of a sports apparel company, Apex. Prior to the transaction, Apex made defendants aware that its primary concern was the need for adequate funding on an immediate and ongoing basis. 959 F.Supp. at 207. Defendants assured Apex that they would provide Apex with such funding. *Id.* Plaintiff alleged that despite these repeated representations, defendants knew such immediate and ongoing funding would not occur until at least one month after the transaction closed. *Id.* at 209. The court held that these statements were more than factual allegations coupled with a conclusion of fraudulent intent. *Id.* Rather, they created a strong inference that defendants acted with the required scienter which was sufficiently plead in light of the PSLRA. *Id. See also Walther v. Maricopa Int'l Invest. Corp.*, 97 Civ. 4816, 1998 WL 186736, at *5–6 (S.D.N.Y. Apr.17, 1998) (allegations that defendant never disclosed to plaintiff the high risk nature of the stocks being traded in plaintiff's account, despite being aware of plaintiff's conservative investment goals, gave rise to a strong inference of recklessness, if not conscious misbehavior).

Here, it is alleged that Richard Postrel made repeated misrepresentations to Marvin Rubinstein knowing them to be false when made. His knowledge of their falsi-

---

**2.** The Second Circuit has defined these two elements as follows:

Motive would entail concrete benefits that could be realized by one or more of the false statements and wrongful nondisclo-

sures alleged. Opportunity would entail the means and likely prospect of achieving concrete benefits by the means alleged. *Shields*, 25 F.3d at 1130.

ty can be inferred from the allegation that it was Postrel who somehow orchestrated the First Date transaction to obtain the 300 shares without paying for them.[3] Accordingly, I find that plaintiffs have alleged conscious misbehavior on the part of Richard Postrel in making these false promises and have thereby satisfied the pleading requirements of the PSLRA.

For the reasons stated above, defendants' motion to dismiss the federal securities fraud claim against Richard Postrel is denied. In addition, because plaintiffs have satisfied the pleading requirements for Section 10(b) and Rule 10b–5, the amended complaint also satisfies the requirements for pleading common law fraud. *See Mishkin,* 1998 WL 651065, at *30 n. 16 (citing *Scone Invests., L.P. v. American Third Market Corp.,* 97 Civ. 3802, 1998 WL 205338, at *10 (S.D.N.Y. Apr.28, 1998) for the proposition that the "elements of common law fraud are essentially the same as those which must be pleaded to establish a claim under § 10(b) and Rule 10b–5").

### C. Claims Against Jennifer Postrel

Plaintiffs bring two claims against Jennifer Postrel: (1) a federal securities claim for violations of Section 10(b) and Rule 10b–5, and (2) a common law claim for aiding and abetting the fraud of Richard Postrel. For the following reasons, both of these claims are dismissed.

■ "[A] litigant may not bring a cause of action for aiding and abetting a section 10(b) violation." *Mishkin,* 1998 WL 651065, at *12 (citing *Central Bank of Denver v. First Interstate Bank of Denver,*

511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994)). Thus, the only form of Section 10(b) liability which remains viable is that of a primary violator. *Id.* The only misrepresentation allegedly made by Jennifer Postrel was in the Confidential Information Memorandum sent to Marvin Rubinstein on September 11, 1996. Marvin Rubinstein's last purchase of Skyteller stock was on August 1, 1996. As a result, Marvin Rubinstein could not have possibly relied on the information contained in this memorandum. *See Mills,* 12 F.3d at 1175 ("A statement cannot be fraudulent if it did not affect an investment decision of the plaintiff.") (citations omitted). As this is the only allegation of misrepresentation on the part of Jennifer Postrel, any claims based on Section 10(b) and Rule 10b–5 must necessarily fail.

■ Plaintiffs allege, however, that Jennifer Postrel is liable for violations of Section 10(b) and Rule 10b–5 as a control person under Section 20 of the 1934 Act.[4] Primary liability may be imposed " 'not only on persons who made fraudulent misrepresentations but also on those who had knowledge of the fraud and assisted in its perpetration.' " *Securities & Exchange Comm'n v. First Jersey Securities, Inc.,* 101 F.3d 1450, 1472 (2d Cir.1996) (quoting *Azrielli v. Cohen Law Offices,* 21 F.3d 512, 517 (2d Cir.1994)). "In order to establish a claim for control person liability under Section 20, plaintiffs must establish (1) a primary violation of the 1934 Act, (2) control of the primary violator by the defendant, and (3) the defendant's culpability in the fraud perpetrated by the controlled person."[5] *Novak,* 997 F.Supp. at 435 (cit-

---

**3.** The precise way in which this was accomplished is not yet clear, but will likely be developed during the discovery process.

**4.** This section states, in pertinent part, that

[e]very person who, directly or indirectly controls any person liable under any provision of this chapter...shall also be liable jointly and severally with and to the same extent as such controlled person....

15 U.S.C. § 78t(a).

**5.** There has been some disagreement within this Circuit as to whether plaintiffs must allege scienter under Section 20(a) of the 1934 Act, or only control. *See In re Gaming Lottery Securities Litig.,* 96 Civ. 5567, 1998 WL 276177, at *8 n. 11 (S.D.N.Y. May 29, 1998). However, because plaintiffs have failed to plead that Jennifer Postrel had the requisite control, I need not reach this issue.

ing *First Jersey*, 101 F.3d at 1472); *see also Mishkin*, 1998 WL 651065, at *25.

▮ Control is defined as the "possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person whether through the ownership of voting securities, by contract or otherwise." 17 C.F.R. § 230.405. Officer or director status alone, however, is not enough to establish control person liability. *Sloane*, 941 F.Supp. at 1378 (quoting *Hemming v. Alfin Fragrances, Inc.*, 690 F.Supp. 239, 245 (S.D.N.Y.1988) for the proposition that "[a] person's status as an officer, director, or shareholder, absent more, is not enough to trigger liability under § 20"). "Accordingly, when a defendant does not clearly occupy control status, the plaintiff must plead facts from which control status can be inferred." *Sloane*, 941 F.Supp. at 1378.

▮ Here the only allegation that even hints at control is the allegation that Jennifer Postrel is the *de jure* or *de facto* Treasurer and/or Chief Financial Officer of Skyteller. This is not sufficient to establish control person liability. The fact that Jennifer Postrel is the wife of Richard Postrel is of no legal significance. To impute control from this relationship alone not only flies in the face of logic, but would require impermissible stereotyping. Accordingly, the federal securities fraud claim against Jennifer Postrel must fail. As there is no aiding and abetting liability under the federal securities laws, plaintiffs' common law aiding and abetting claim is also deficient. There are simply no allegations that Jennifer Postrel participated in or assisted Richard Postrel in executing the fraud perpetrated against Marvin Rubinstein.[6] Jennifer Postrel's motion to dismiss is granted, but plaintiffs may have leave to amend within thirty days of the date of this Order.

---

**6.** The fact that Jennifer Postrel sent Marvin Rubinstein the option to purchase ten additional shares, without more, does not rise to

## D. Breach of Fiduciary Claim

▮ Pursuant to New York choice of law rules, a breach of fiduciary duty claim is governed by a relevant company's state of incorporation. *See High View Fund*, 27 F.Supp.2d at 428, n. 6. As Skyteller was incorporated in Delaware, its rules govern this claim. The Delaware Court of Chancery has stated:

> In determining whether a complaint states an individual or a derivative cause of action, the Court is not bound by the designation employed by the plaintiff. Rather, the nature of the action is determined from the body of the complaint. To set out an individual action, the plaintiff must allege either an injury which is separate and distinct from that suffered by other shareholders, or a wrong involving a contractual right of a shareholder.

*Moran v. Household Intern., Inc.*, 490 A.2d 1059, 1069–70 (Del.Ch.), *aff'd*, 500 A.2d 1346 (Del.1985) (citations and internal quotation omitted).

▮ Here, plaintiffs' allegations contain elements of both. The Amended Complaint states that

> Richard Postrel breached, violated and neglected his fiduciary duties to plaintiffs by virtue of the foregoing conduct, and also by virtue of other conduct including, but not limited to, causing Skyteller to fail to make distribution to plaintiffs, or to make distributions in an untimely or discriminatory manner; causing Skyteller to enter into partnerships and other business arrangements that were designed to, and did, have the effect of enriching themselves and increasing the value of his ownership of Skyteller while depriving plaintiffs of such benefits and diluting the value of plaintiffs' ownership of Skyteller; by improperly providing equity or other things of value, belonging to Skyteller,

the level of assistance needed to sustain an aiding and abetting claim.

to various persons, including Skyteller's attorney, . . .

Am. Cmpl., ¶ 50. Presumably, the "foregoing conduct" includes Richard Postrel's misrepresentations concerning Skyteller's supposed cash crisis. These misrepresentations were made to deceive Marvin Rubinstein into investing an additional $20,000. *Id.*, ¶ 25. But the corporation did not benefit; instead, Richard Postrel misappropriated the money for his own use. *Id.* Although Richard Postrel assured repayment of the monies advanced, he never repaid any portion of the $20,000. *Id.*, ¶ 26. These allegations are specific to Marvin Rubinstein and thus represent an individual claim against Richard Postrel for breach of fiduciary duty.

■ The claim involving the stock misappropriation is not so clear cut. Although it is true that actions for waste of corporate assets are typically brought as derivative claims, *see Smith v. Smitty McGee's, Inc.*, No. 15668, 1998 WL 246681, at *3 (Del.Ch. May 8, 1998), this claim does not fit neatly into this category. Here, Richard Postrel's actions in depriving Skyteller of additional capital harmed both Skyteller as a corporate entity and the Rubinstein plaintiffs individually as shareholders. The latter harm flows from the fact that the Rubinsteins were the only shareholders other than the Postrels. Thus, the misappropriation claim may be brought both individually and derivately on behalf of Skyteller. The pure misappropriation of corporate assets claim, however, must be brought derivately.

■ Accordingly, plaintiffs will be given thirty days from the date of this Order to amend their complaint and separate the individual claims from the derivative claims. Regarding the derivative claims, defendants' argument that plaintiffs have failed to comply with Fed.R.Civ.P. · 23.1 ("Rule 23.1") is unavailing. Rule 23.1 requires that in a derivative action the complaint must "allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort." "Such a demand is excused if the demand would be 'futile,' 'useless' or 'unavailing;' if the directors are 'antagonistic, adversely interested, or involved in the transaction attacked, a demand on them is presumptively futile and need not be made.'" *Kaster v. Modification Sys., Inc.*, 731 F.2d 1014, 1017 (2d Cir.1984) (quoting *Cathedral Estates v. Taft Realty Corp.*, 228 F.2d 85, 88 (2d Cir.1955) (citations omitted)). Given the fact that it is the Postrels themselves who are under attack, plaintiffs' allegations of demands on them are sufficient, without more, to satisfy the requirements of Rule 23.1. Nonetheless, such demands must be re-pleaded if plaintiffs choose to amend their complaint in this regard.

### E. Transfer of Venue

■ Venue in this securities case is governed by Section 27 of the 1934 Act which provides for venue in either "the district wherein the defendant is found or is an inhabitant or transacts business," or "the district wherein any act or transaction constituting the violation occurred." 15 U.S.C. § 78aa. Here, only two acts occurred in New York: (1) the transmittal of checks representing distributions from the First Data transaction to Marvin and Chie Rubinstein at their New York home (Am. Cmpl., ¶¶ 29, 32); and (2) the transmittal by Jennifer Postrel of an option agreement to Marvin Rubinstein in October 1995 (Am. Cmpl., ¶ 21). Neither of these acts can be said to constitute any of the violations alleged by plaintiffs, the former because it occurred after Marvin Rubinstein's last purchase of Skyteller stock and the latter because this act was not done in furtherance of the fraud perpetrated by Richard Postrel. With regard to that fraud, the alleged misrepresentations are deemed to "occur" in the district from where they are transmitted, the Southern District of Flori-

da, not where they are received, the Southern District of New York. *See Purcell Graham Inc. v. National Bank of Detroit,* 93 Civ. 8786, 1994 WL 584550, at *4 (S.D.N.Y. Oct.24, 1994) (citations omitted). Defendants have objected to venue in this district and plaintiffs have not rebutted that objection with a showing that venue is in fact proper in the Southern District of New York. Because venue is not proper here, the case must be transferred to the Southern District of Florida.[7]

 Transfer of venue to the Southern District of Florida is also warranted pursuant to 28 U.S.C. § 1404(a) which provides:

> For the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The factors to be considered in making this determination include: "(1) the place where the operative events occurred; (2) the convenience of the parties; (3) the convenience of the witnesses; (4) the availability of process to compel the attendance of unwilling witnesses; (5) the cost of obtaining witnesses' presence; (6) the location of records and documents; (7) a forum's familiarity with the governing law; (8) trial efficiency; and (9) the interests of justice." *Purcell Graham,* 1994 WL 584550, at *4. Whether to grant such a motion rests in the sound discretion of the court. *Factors, Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 218 (2d Cir.1978).

 In general, a plaintiff's selection of a forum is entitled to "substantial consideration" and should not be disturbed where the inconvenience to the parties is equal. *See Purcell Graham,* 1994 WL 584550, at *4–5; *see also Milgrim Thomajan & Lee P.C. v. Nycal Corp.,* 775 F.Supp.

117, 122 (S.D.N.Y.1991) ("[d]eference is given to plaintiff's choice of forum,...,because the purpose of § 1404(a) is not to shift the inconvenience from one party to the other"). This deference is entitled to less consideration where, as here, the forum chosen has no substantive ties to the litigation. *American Marketing Enters., Inc. v. Sun Apparel, Inc.,* 96 Civ.1994, 1997 WL 47813, at *5 (S.D.N.Y. Feb.6, 1997).

 Although convenience to the parties and party witnesses is important, the "availability of process to require non-party witnesses to testify is the most compelling consideration." *Purcell Graham,* 1994 WL 584550, at *5; *see also Orix Credit Alliance, Inc. v. Brown,* 93 Civ. 1019, 1994 WL 392240, at *7 (S.D.N.Y. July 27, 1994). Here, defendants have identified at least one non-party witness, Skyteller's outside counsel, who resides in Florida.[8] Plaintiffs have not indicated any potential witnesses, other than plaintiff Marvin Rubinstein, who reside in New York. This factor also cuts in favor of transfer.

Several of the other factors also militate in favor of transfer. As previously stated, the operative events (*i.e.,* the misrepresentations) occurred in Florida. Most of the pertinent records and documents are located in Florida. The non-party witnesses would likely be inconvenienced if forced to travel to New York. In addition, because this is a federal securities case, it cannot be said that the New York forum has any greater familiarity than Florida with the governing law. This factor is neutral. Lastly, plaintiffs have not shown any significant burden which would result if venue is transferred. In short, sufficient factors

---

7. I decline defendants' suggestion that I dismiss pursuant to Fed.R.Civ.P. 12(b)(3) in light of their apparent concession that venue is proper in the Southern District of Florida. Concerns for judicial economy also militate against such a dismissal as doing so would only force plaintiffs to re-file their action in Florida.

8. Although not mentioned by the parties, the employees of First Data may well be called to testify. Whether this cuts in favor or against transfer cannot be determined as First Data's principal place of business was not provided.

warranting a transfer of venue are present. Accordingly, defendants' motion to transfer venue of this case to the Southern District of Florida is granted.

## III. Conclusion

For the reasons stated above, the complaint is dismissed against Jennifer Postrel with leave to amend. Plaintiffs are also granted leave to amend their complaint in order to separate the individual claims from the derivative claims. Finally, this case will be transferred to the Southern District of Florida. The Clerk of the Court is directed to effect this transfer and close this case.

SO ORDERED: